MARY M. DRISCHMAN, DEFENDANT IN ERROR, v. SARAH E. McMANEMIN, PLAINTIFF IN ERROR.

Argued June 30, 1902—Decided November 17, 1902.

1. In a suit for breaches of an agreement of letting where it appears that the plaintiff held, under a written lease, recovery can be had only for breaches of the covenants of the lease.
2. Recovery cannot be had for failure to furnish articles not specified in the lease, although agreed to be furnished in conversations had prior to the execution and delivery of the lease.
3. Recovery cannot be had for failure to give possession at the date of the lease for profits which might have been made from a use of the premises unless the declaration contains allegations of special damages.

On error to the Atlantic Circuit.

For the plaintiff in error, *Thompson & Cole.*

For the defendant in error, *George A. Bourgeois.*

The opinion of the court was delivered by

GARRETSON, J. The plaintiff was the tenant of the defendant, and recovered a judgment against her for $620 for breach of an agreement of letting. This amount, the plaintiff's counsel claims in his brief, and the verdict is not supportable on any other theory, is made up of three elements, viz., $260 for loss of business because of the defendant's failure to give to the plaintiff possession of the premises at the time agreed upon; $60 for moneys expended for an adequate supply of dishes and cooking utensils, &c., and $300 paid for rent of the premises for a certain part of the year when the tenant was not able to occupy them because of a deficiency in the heating apparatus.

The first count in the declaration is upon a lease, dated March 20th, 1900, for a certain premises, completely furnished with an adequate supply of dishes and cooking utensils

for the purpose of a boarding-house, and an allegation of a breach of the agreement of letting by failing to furnish the adequate supply of dishes and cooking utensils.

The second count is upon the same lease, setting up that, in consideration of the payment, on April 7th, of $400 on a sum of $500 not due until July 1st, the defendant agreed to furnish divers articles for the premises leased, and build a sun parlor, and failed to do so.

The third count is that, on the 20th of March, the defendant agreed to lease the premises from April 1st, 1900, to October 1st, 1900, for $1,200, and, on the same day, in consideration of $300 additional, agreed to lease the same premises for one year, from April 1st, 1900, equipped with heating apparatus sufficient to heat the same, to be used as a boarding-house during the winter months, with an averment that she paid the $1,500, but that the premises were not equipped with such a heating apparatus as the agreement provided for, and that she was unable to live in the premises, and was compelled to vacate them.

The fourth count alleges that in consideration of the payment of $1,500 the defendant promised to lease and surrender certain premises to the plaintiff from the 1st day of April, 1900, to be used as a boarding-house, and that although the plaintiff performed her agreement and paid the $1,500, the defendant did not give or surrender to the plaintiff the possession of the premises until May 3d, 1900, and so she was deprived of pursuing her business of conducting a boarding-house and entertaining guests, to her damage.

It is manifest, from an examination of the undisputed testimony, that the plaintiff held the premises under a written lease, bearing date March 20th, 1900, purporting to be made by John C. McManemin, who is the son of the defendant, to Mary M. Drischman, the plaintiff. The lease is signed by John C. McManemin, "agent," and by the plaintiff. This is a lease of the premises for one year, commencing April 2d, 1900, with the privilege of "perpetuating this lease, from year to year for five straight years," at the annual rental of $1,500. It contains a right to re-enter on non-payment of

rent, and a covenant to pay the rent, not to assign the lease or underlet any part of the premises, nor permit any part to be used for any other purpose than a boarding-house, giving to the lessee the privilege of using a certain name and to surrender the premises at the expiration of the term. The lessor covenants to furnish the house complete with adequate dishes and cooking utensils, also to provide lace curtains for dining-room, parlor and office, also portier curtain for parlor door, and to erect a suitable fire-escape on the house.

The plaintiff testifies that she rented the house through Mr. Downs, acting as the agent of the defendant; that she finally made her arrangements with him for the renting of the property. She admits that she signed the lease in Mr. Downs' office and received it from him after she was in possession of the premises, and further testifies as follows:

"*Q.* Now, Mrs. Drischman, for how long a time did you finally rent this property?

"*A.* One year.

"*Q.* And that was under the contract that was made with Mr. Downs, I understand, at his office?

"*A* Yes, sir; with the privilege of one to five years.

"*Q.* You had the privilege of having five years?

"*A.* Yes, sir; providing Mrs. McManemin would accept me as a tenant—providing I proved satisfactory to her at the end of the year.

"*Q.* Now, was that said?

"*A.* Yes, sir; Mr. Downs and I had that understanding.

"*Q.* Did you communicate that fact to Mrs. McManemin?

"*A.* Yes, sir.

"*Q.* Where?

"*A.* At her house when I paid her the money.

"*Q.* You told her, did you, about the contract that Mr. Downs had made?

"*A.* Yes, sir; and she was very much pleased and said I could have the house.

"*Q.* And told you you could have the house for five years, and you took it for five years?

"*A.* No, sir; I took it for one year, with the privilege of the other five.

"*Q.* With the privilege of the other five?

"*A.* Yes, sir; it is in the lease that I could have it for five years.

"*Q.* In what lease?

"*A.* The lease that I got after I went in the house.

"*Q.* What lease was that?

"*A.* That was the lease that Mr. Downs gave me.

"*Q.* Now, I show you a paper and ask you whether that is the lease that Mr. Downs gave you?

"*A.* Yes, sir; that is the lease I always had.

"*Q.* Do you admit that is the lease you got from Mr. Downs for that property?

"*A.* I got a lease like that.

"*Q.* From Mr. Downs for this property?

"*A.* Yes, sir."

And the lease is afterwards admitted in evidence.

Downs also testifies that after conversations with the plaintiff the agreement for the leasing was finally put in writing, and that he drew the lease, acting as agent for the owner, whom he supposed to be John C. McManemin, the son. Whether the lease was first signed by the plaintiff or McManemin is immaterial. The plaintiff cannot be heard to deny that she took the property under this writing. All negotiations or promises between the plaintiff and the defendant, or her agent, prior to the execution of the lease, were abrogated by or embodied in the written contract, and that is the only evidence of the letting between these parties.

This renders illegal all evidence of promises made by the defendant or her agent before the lease was signed, and it was error in the judge to submit to the jury the question whether the plaintiff held under the lease or under a verbal agreement.

The plaintiff, therefore, can only recover in this action if it appears that the defendant has failed to keep the covenants in the lease, unless it appears that subsequent to the execution

of the lease the plaintiff and defendant made an agreement with relation to the letting of the premises outside of the lease. This the plaintiff claims was done, and this contract must be found in a conversation between the plaintiff and the defendant. This conversation took place about the 7th of April, 1900, and in it the plaintiff testifies that the defendant "said she was short of money, and if I would give her $500 more she would give me these things at once, and then I had to make a mortgage to get the money, and I could only get $400; I couldn't get $500.

"*Q.* What did she say she would do if you gave her this money?

"*A.* She would make me a sun parlor in the fall and extend the porch on top and put carpets in the house, because there were mattings on the floor, and wardrobes in the rooms, and give me dishes for the dining-room, serving table and the glassware and the cooking utensils, which I hadn't any at all, and the bed-spring which was missing, and ten chairs for the dining-room, two tables and the steam table."

The plaintiff testifies that on this date of April 7th, 1900, she paid the defendant $400 of an installment of rent, which, by the lease, was not payable until July 1st, 1900, and that this payment in advance was the consideration for furnishing the articles specified, but this conversation and transaction could not be allowed to vary the written contract, and there is nothing to show that there was intended by the parties to be an additional contract outside of the lease, and the plaintiff does not, in the evidence, attempt to prove any damages for failure to furnish anything mentioned in this conversation, except the dishes and cooking utensils, and these the defendant was obliged to furnish under the terms of the lease, and for failure to furnish them is liable in damages.

In the lease the lessor covenanted to furnish the house complete with adequate dishes and cooking utensils, and it is alleged in the declaration that there was a breach of this covenant, and to sustain this allegation the plaintiff proves that she expended $31.09 for necessary dishes and cooking utensils. The measure of her recovery was not what she paid for these

articles, but the value of the use of them during the term; for, having purchased them, they belonged to her, and would continue to be her property when her term came to an end. Upon this subject the judge charged the jury as follows:

"They claim, also, that there was an expenditure by the plaintiff of something like $60. You will remember the sum, for dishes and cooking utensils which the plaintiff says she had to furnish because of the neglect of the defendant to furnish them; now, if you find that the defendant undertook to furnish these things and did not do it, and the plaintiff found it necessary to do it for herself, in order to carry on the business, then she would be entitled to an allowance for that sum."

This direction was erroneous in not stating the proper measure of damages for failure to keep this covenant in the lease.

The claim to recover back so much of the rent paid as was for the months when the plaintiff testifies she was unable to use the premises because of a defective heating apparatus, depends entirely upon her evidence of a verbal agreement of letting by Downs, as agent of the defendant. It does not appear that Downs was the defendant's agent for any other purpose than to rent the premises, and he had no authority to make such a representation; besides, the plaintiff testifies that she went through the whole house from cellar to garret, to see if everything was all right, before she agreed to rent it. But no recovery can be had because of the defective heating apparatus, because there was no covenant in the lease as to the heating apparatus, and, as already stated, the lease took the place of all previous negotiations, representations and agreements, and embodied the complete contract between the parties.

The plaintiff also claims damages for being deprived of pursuing her business of conducting a boarding-house and entertaining guests, by reason of the failure of the defendant to surrender to her the possession of the premises until the 3d day of May, 1900, the defendant having agreed to give possession on the 1st day of April. If there was a right to recovery upon this ground, the declaration not avering special

damages, the measure of damages was not what the plaintiff might have made out of her boarders, but the rental value of the property while she was kept out of possession. The judge charged the jury that if, from the evidence, she was entitled to recover for this, "then it is for you to say what would have been the profit—the net profit—for that period of time at the specified rate." In this there was error. Besides the plaintiff was not entitled to any recovery upon this branch of the case, for she held under the written·lease, and she testifies that she did not take possession of the premises until May 3d, and the lease was not delivered until after she had entered into possession. The·lease took effect only from delivery, and although it called for a term of one year from April 2d, it · could have force and effect only from May 3d.

The judgment should be reversed.

*For affirmance*—DIXON, ADAMS. 2. .

*For reversal*—THE CHANCELLOR,. CHIEF JUSTICE, GARRISON, COLLINS, GARRETSON, HENDRICKSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM. 11.