IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## ·STATE OF NEW JERSEY.

JUNE TERM, 1905.

---

## THE INHABITANTS OF THE CITY OF TRENTON v. THE TRENTON STREET RAILWAY COMPANY.

Argued March 3, 1905—Decided February 28, 1906.

1. A municipal ordinance, passed under authority conferred upon the municipality by the first section of an act concerning street railroad companies, approved March 11th, 1893, by the provisions of which the municipality consents to the substitution, by a street railroad company, of electric power in the place of horses in the operation of its cars, and the erection of poles in the public streets, and the stringing of wires upon them, for the purpose of furnishing such power to the cars, such consent being given upon the expressed ·condition that the company will repave a designated portion of the streets through which its road is laid when called upon to do so by the municipal authorities, and the acceptance of that ordinance by the company, constitute a valid contract between the municipality and the corporation, and a refusal by the corporation to repave, when notified to do so by the municipality, is a breach of the contract for which an action will lie.
2. The act of March 23d, 1900, which imposes an annual tax upon all the property and franchises of corporations using or occupying public streets and highways, and declares that the franchise taxes

assessed thereunder shall be in lieu of all other franchise taxes then assessable against such corporations, does not relieve such corporations from the duty of performing contract obligations theretofore voluntarily assumed by them.

On demurrer to declaration.

Before GUMMERE, CHIEF JUSTICE, and Justices FORT, GARRETSON and PITNEY.

For the plaintiff, *Charles E. Bird* and *Edwin R. Walker.*

For the defendant, *George W. Macpherson* and *John Rellstab.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.   The first count of the declaration avers that on the 12th day of February, 1894, the board of public works of the city of Trenton, then being vested with the powers now exercised by the common council of that city, in pursuance of an application made to it by the Trenton Passenger Railway Company, Consolidated, a corporation owning and operating certain railway lines in designated streets in that city, passed an ordinance authorizing the company to use electric motors as the propelling power of its cars, and for that purpose to erect poles and string wires thereon upon those streets; that this authority was granted upon condition, expressed in the ordinance, that when any paved street through which the company's railway ran should be ordered repaved by the duly constituted municipal authorities, the company should repave the portion of the street inside its rails, between its tracks, and for two feet, if a double track, and three feet, if a single track, outside the outer rails thereof, with such material and in such manner as the municipal authorities might direct; that the company accepted in writing, under its corporate seal, this ordinance, and all of its provisions, for itself and its successors, and in and by its acceptance agreed to be bound by and perform

all the conditions and impositions contained in the ordinance as a consideration for the enjoyment by it of the rights, privileges and franchises granted thereby. The count then sets out that on the 29th day of June, 1898, the Trenton Passenger Railway Company, Consolidated, together with certain other street railway companies, under and by virtue of the statutes in such case made and provided, merged and consolidated their respective capital stocks, franchises, privileges, properties, rights of way and railroads into one company, to be known by the corporate name of the Trenton Street Railway Company; and that by such merger and consolidation the Trenton Street Railway Company became subject to and bound by all the conditions and impositions contained in the ordinance of February 12th, 1894. The pleading then avers that on the 25th day of September, 1902, the common council of the city passed an ordinance directing a portion of South Broad street to be repaved with sheet asphaltum; that this was one of the streets designated in the ordinance of February 12th, 1894, and that the repaving ordinance required that the defendant company should bear the expense of repaving so much of the street as was inside the rails of its tracks and for two feet outside of its outer rails. The count then alleges that the defendant company, although duly requested to do so, did not repave these portions of the street, but neglected and refused so to do. Then follows the *ad damnum* clause.

To this count the defendant demurs and assigns, among others, the following grounds—*first,* that the municipal authorities had no power to impose upon the Trenton Passenger Railway Company, Consolidated, and its successors, the burden of repaving any portion of its streets, or to exact a contract from the former company requiring it and its successors to assume that burden; *second,* that the contract entered into between the Trenton Passenger Railway Company, Consolidated, and the city, set out in the declaration, is *ultra vires* and without legal force; and *third,* that by the effect and operation of an act of the legislature passed March 23d, 1900, entitled "An act for the taxation of all the prop-

erty and franchises of persons, co-partnerships, associations or corporations using or occupying public streets, highways, roads or other public places," &c., the defendant was relieved and exonerated from the burden or expense of repaving imposed by the ordinances referred to in the declaration.

The first ground of demurrer specified by the defendant does not require consideration. Conceding that the municipality had no power to *compel* the street railway company to repave those portions of the public highways which lie between its tracks, and for two feet outside thereof, the declaration discloses no attempt made by it to do so. The allegation is that the company, being desirous of substituting electricity as the motive power of its cars, applied to the municipal authorities for permission to do so, and for authority to erect poles in the public streets and string wires thereon for the purpose of supplying that power to the motors to be installed upon its cars; that the municipality, in response to that application, in effect, said to the company, "We will grant you permission to do what you ask if you will agree, on your part, to repave so much of our streets, through which your road runs, as lie between the rails of your tracks and two feet outside of them, when we request you to so do;" to which the company replied, "We accept your proposition and agree to do the repaving in consideration of your granting us the permission to make the change in our motive power which we have applied for." The obligation which this suit seeks to enforce therefore rests (if it exists at all) upon the agreement of the parties, and not upon any power inherent in the municipality to compel the defendant, or its predecessor in ownership, to repave any portion of the public streets against its will and without its consent.

For the same reason, the contention that the Trenton Passenger Railway Company, Consolidated, and its successor, the defendant, are under no obligation to repave any part of the public streets of the municipality, because the municipal authorities had no power to exact a contract from the former company, requiring it and its successors to assume the burden imposed upon it by the ordinance, is without substance. No

compulsion was exercised by the board of works upon the corporation for the purpose of causing it to enter into the contract. On the contrary, the company was entirely free to either accept or reject the proposition submitted to it by the board; it accepted it, presumably, because it considered that the advantages to come to it therefrom more than counterbalanced the burdens to which it would be subjected thereby.

The question presented by the second specification of causes of demurrer that a contract such as is set out in the declaration is *ultra vires* the municipality, has already received consideration from this court in the case of *Jersey City* v. *Jersey City and Bergen Railway Co.,* 41 *Vroom* 360. In that case the railway company, by its charter, was authorized to construct and operate a railroad through certain streets of Jersey City, provided the consent of the common council should be first obtained. Application having been made by the company to the council for such consent, that body passed an ordinance granting its consent, upon condition that the company should pay to the city an annual license fee for each car run upon its railroad. The ordinance was accepted by the company. In a suit brought by the city to collect the license fees thus contracted for, the company set up as a defence that the contract was *ultra vires* and void. Mr. Justice Dixon, delivering the opinion of the court, thus disposes of this question: "As the legislature was itself the representative of the general public, and had power to grant, unconditionally, to the company the right to construct its railroad through the streets of Jersey City, the fact that the right was granted upon the condition that the consent of the common council should first be obtained indicates that such consent might be given, or withheld, on grounds of advantage or disadvantage, to the local public, represented by the municipal body. The construction of the railroad through the streets of Jersey City might in various ways lead to an increase in the burdens of the municipality, and its consent was made requisite, doubtless, in order that provision should be made to meet or mitigate these burdens. What the provision should be the

legislature did not prescribe, and, so long as it was satisfactory to the city and the company, other persons were not concerned. These parties chose, by the ordinance of the council and its acceptance by the company, to put the provision in the form of an annual contribution by the latter company to the municipal treasury, graduated by the company's use of the streets, and we see no reason to question their power of doing so or the legality of their bargain."

We are unable to perceive any distinction, from a legal standpoint, between the cited case and that now under consideration. The ordinance of February 12th, 1894, was admittedly passed by the board of works, under the authority conferred upon it by the supplement to "An act concerning street railroad companies," approved March 11th, 1893 (*Gen. Stat., p.* 3210), which provides, in its first section, that any street railway company may use electric motors as the propelling power of its cars, instead of horses, provided it shall first obtain the consent of the municipal authorities having charge of the streets on which it is proposed to use such motors, and further provides, in its second section, that such municipal authorities may also, when they deem it proper, authorize the use of poles, to be erected in the public streets, with wires strung thereon, for the purpose of supplying the motors with electricity. The substitution of a power which would enable the cars of these companies to be operated at a much higher rate of speed than was possible when drawn by horses, thereby naturally tending to drive other vehicles off those portions of the highway occupied by their tracks, and thus increasing the wear and tear upon the remaining portions thereof and rendering more frequent repaving of the streets necessary, and the erection of poles in the streets, with wires strung thereon, charged with a dangerous current of electricity, tend in fully as great a degree to an increase in the burdens of the municipality as does the original construction of the railroad; and if the legislature, as was held in the Jersey City case, made the consent of the municipality requisite, in that case, to the original construction in order that provision should be made to meet or mitigate the municipal

burdens growing out of such construction, a similar object must have been intended by that body in requiring the consent of the municipality to the change in motive power by these companies and the accompanying erection of poles and wires in the public streets. The fact that the provision which was made by the parties in the present case differs from that made in the case cited in nowise differentiates the cases, for in each of them the legislature left it to the municipality and the corporation to mutually agree upon such provision as should be satisfactory to both of them. In the case cited it took the form of an annual contribution to the city treasury; in the present case it took the form of an assumption by the company of the burden of repaving a portion of those streets through which its roads ran whenever in the judgment of the municipality such repaving should become necessary or advisable. The selection of the one method of making such provision is as equally within the power of the contracting parties as is the other, and the legality of the bargain is equally as manifest in the one case as in the other.

A feature was present in the Jersey City case which is absent from that before us, namely, that subsequent to the passage of the ordinance in that case and its acceptance by the corporation, the legislature passed a supplement to the company's charter by which it expressly approved the conditions imposed by the ordinance. But a reading of the opinion delivered in the case shows that the supplement only furnished an additional reason for considering the contract valid, and that the same conclusion would have been reached had no such supplement been passed.

The contention contained in the third specification of causes of demurrer, that the effect of the act of March 23d, 1900, providing for the taxation of all the property and franchises of * * * corporations using or occupying public streets or highways is to relieve the defendant from the burden of repaving assumed by its predecessor by its acceptance of the ordinance, rests upon the idea that this burden is a franchise tax, and has been annulled by section 8 of the act appealed to, which declares that the franchise tax provided by that act

shall be in lieu of all other franchise taxes then assessable against corporations using the public streets. It is asserted by counsel that the Court of Errors and Appeals, in *Fielders* v. *North Jersey Street Railway Co.*, 39 *Vroom* 343, has declared that an ordinance imposing upon a street railway company the burden of repairing or repaving a portion of the public streets through which its roads run is a taxing ordinance, pure and simple. But this, it seems to us, is a plain misconception of what was there decided. There is a marked distinction between the ordinance under consideration in that case and the one now before us. In that case the ordinance was a general one, imposing the burden of repairing upon all railway companies using the public streets of the city. There was no acceptance of the ordinance by the defendant, nor was there any agreement by it to perform the duties imposed as a consideration for the grant by the municipality of any privilege or franchise. The opinion expressly states (at *p.* 347) that the case was "devoid of evidence to show that any liability for repair or maintenance of the street pavement was imposed upon the defendant as a condition of its right to exercise its franchise, or that the defendant by any contract had undertaken such duty," and it was pointed out that for this reason the passage of the ordinance must be considered as an exercise either of the police power or of the taxing power. The conclusion reached was that the burden imposed was a tax, and that its imposition was for that reason unlawful, but Mr. Justice Pitney, who delivered the opinion, indicates (at *p.* 346) that where a burden of this nature is lawfully imposed by a municipality upon a street railway company as a condition of the grant to it of any franchise or privilege, the acceptance of such a condition by the company constitutes a contract, the burden being assumed voluntarily by it and not imposed upon it *in invitum,* which is the essence of taxation. The obligation which the present ordinance imposes, having been voluntarily assumed by the company in consideration of the privilege granted by the ordinance, and not imposed upon it as a tax, was not annulled by the act of 1900.

Other reasons are specified by the defendant in support of its demurrer, but they are based upon facts which are not set out in the declaration, and which cannot be inferred from anything contained in that pleading; a determination, therefore, of the abstract legal propositions which they present would be a bootless task.

The plaintiffs are entitled to judgment upon the demurrer.