PATRICK DORAN, DEFENDANT IN ERROR, v. HUGO A. THOMSEN, PLAINTIFF IN ERROR.

Argued June 25, 1908—Decided November 16, 1908.

1. Where a father was possessed of an automobile which he kept upon his premises and his daughter, about nineteen years of age, was accustomed to drive it, and did so whenever she felt like it, asking permission to use it when the father was at home, but when not at home took it sometimes without permission, there being no proof that the daughter was actually employed by the father to operate the machine—*Held*, in an action against the father, where the daughter in using the machine for her own pleasure in driving her personal friends, negligently injured a person in the highway, that such proof was not sufficient to constitute the daughter the servant or agent of the master, and that a motion for a direction of a verdict for the defendant should have prevailed.

2. An act by a servant not malicious is within the principle that to render a master liable for the negligent act of the servant such act must be within the scope of the employment.

3. To render the master liable for the negligent act of the servant the act must be done for the purpose of executing the master's orders and in doing his work and while actually engaged in serving the master, and it is not enough to say that the injuries complained of would not have been committed without the facilities afforded by the servant's relations to his master.

4. The court charged the jury: "If she took that machine out at that time in pursuance of a general authority of her father to take it whenever she pleased for the pleasure of the family and for her own pleasure, for the purpose for which the master bought it, for the purpose for which her father owned it, for the purpose for which he expected her to operate it, then she was the servant of the father. Under those circumstances that was the business for which the father bought the machine." *Held*, error, because it based the creation of the relation of master and servant upon the purpose which the parent had in mind in acquiring ownership of the vehicle and its permissive use by the child, ignoring an essential element in the creation of that *status* as to third persons, that such use must be in furtherance of and not apart from the master's service and control.

On error to the Supreme Court.

For the plaintiff in error, *Collins & Corbin.*

For the defendant in error, *Willard W. Cutler.*

The opinion of the court was delivered by

VOORHEES, J. This action was brought to recover for personal injuries inflicted upon the plaintiff by being run into by an automobile at Morristown.

A demurrer was filed to the declaration, originally consisting of three counts, and was sustained as to the first and third counts, but overruled as to the second count. The Supreme Court said: "It (the second count) in effect avers the relationship of master and servant and that the accident was caused by the negligence of the servant while operating the motor vehicle for the master." *Doran v. Thomsen,* 45 *Vroom* 445.

The allegations of the second count are that the defendant possessed an automobile of great power capable of being operated at a speed of sixty miles an hour and thereby it became the defendant's duty to use due care in its management while being operated along the public highways; yet the defendant, not regarding his duty, consented and allowed the said vehicle in his possession and control to be operated along the public highways at such a high rate of speed, to wit, at sixty miles an hour, that the vehicle was not in safe and proper control and could not be properly managed by the person in charge, and that on the 22d of September he did negligently direct, consent and allow the said vehicle in his possession to be operated by a member of his family so carelessly and without regard to the safety of the plaintiff and other persons in the highways at such a high rate of speed that the vehicle was not under control of the person operating the same, and then and there through the negligence of the person operating it, ran into and collided with the plaintiff, by means of which he was injured.

If the defendant is liable for the negligent manner in which the vehicle was operated then a jury question was presented and as to that negligence, the court properly submitted the case to the jury. But, there is another and preliminary question to be considered, which arises upon motions to nonsuit and to direct a verdict for the defendant.

The question thus presented is whether, upon the theory

adopted by the Supreme Court in allowing the second count of the declaration to stand, and upon which the case was tried, the defendant can be held liable. That theory involves the application of the doctrine of *respondeat superior* arising out of the relation of master and servant, or of principal and agent.

The automobile in question was the property of the defendant. He lived at Madison and kept it on his premises. His daughter, about nineteen years old, was accustomed to drive it. She used it sometimes twice a day. At the time of the accident she had three friends in the car with her and was out for her own pleasure. No other member of the family was with her. So that the machine was then being run by the daughter upon no errand of the father.

There was no evidence to show that defendant's daughter was *employed* by him to operate the machine, but she was allowed to do so from time to time, and drove it whenever she felt like it, as also did her brother.

The defendant's testimony was that he bought the machine "for our own use, the same as a person might buy a horse and carriage for the family;" that it was operated mostly by his son and daughter, and when he was at home they had to come and ask for permission to use it, but when not at home they sometimes took it without permission.

On the day in question the father was absent in New York City and did not actually know that his daughter was intending to use the automobile, but he knew that she did use it whenever she desired to do so. She, on this particular day, took it of her own accord without asking permission. This evidence was uncontradicted.

The case was submitted by the trial court to the jury solely upon the theory that the daughter of the defendant, in driving the machine, was the defendant's servant, and instructed the jury that unless they found that the daughter was such servant, the defendant would not be liable.

The mere fact of the relation of parent and child would not make the child the servant of the defendant. In *McCalla* v. *Wood*, 1 *Penn.* *86, Chief Justice Kirkpatrick, in a case

brought against a parent for the trespasses of her sons as such, said: "Upon principles of law one person can never be made liable for the trespass of another. It is true that if one command or authorize his servant to commit a trespass he is responsible himself, but then it is the trespass of the master according to the well-known maxim of the law *qui facit per alium facit per se,* and it must be so charged in the declaration."

To constitute the relation of master and servant as to third persons, it is not essential that any actual contract should subsist between the parties or that compensation should be expected by the servant. While the relation of master and servant in its full sense invariably and only arises out of a contract between the servant and the master, yet such contract may be either express or implied.

"The real test as to third persons," says Mr. Wood, in his work on *Master and Servant, p.* 11, § 7, "is whether the act is done by one for another, however trivial, with the knowledge of the person sought to be charged as master with his assent, express or implied, even though there was no request on his part to the other to do the act in question."

It will be noticed that the act must be done by the one for the other. That was not so in the case at bar, and so there was no evidence upon which to find the existence of the relation if the daughter was not doing an act for her father. She was not even driving other members of the family. She was using the machine as a means of recreation and pleasure for herself and her own friends, and it would seem impossible to draw the conclusion that she could be regarded as the agent or servant of her father upon that occasion.

But there is still another ground. Assuming that the relation of master and servant existed generally between the father and daughter, yet it does not appear in this case that on the occasion in question she was acting as such servant within the scope of her employment.

That the master is responsible for the negligence of his servant when acting within the scope of his employment is elementary law, but that he is not responsible if the negli-

gence was committed by the servant when engaged in some private matter of his own, is equally elementary.

These two propositions are well stated in two New York cases. *King* v. *New York Central and Hudson River Railroad,* 66 *N. Y.* 181, where the court spoke as follows: "Where one person has sustained injury from the negligence of another, he must in general proceed against him by whose negligence the injury was occasioned. If, however, the negligence which caused the injury was that of a servant while engaged in his master's business, the person sustaining the injury may disregard the immediate author of the mischief and hold the master responsible for the damages sustained." In *Wyllie* v. *Palmer,* 137 *Id.* 248, the court said: "The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrong-doer and the person sought to be charged for the result of such neglect or wrong, *at the time and in respect to the very transaction out of which the injury arose.*"

In *Holler* v. *Ross,* 39 *Vroom* 324, Mr. Justice Fort, speaking for this court, says: "The servant of the master cannot bind the master to respond in damages to the plaintiff unless it be shown that the act which the servant did, which caused the injury, was an act which was expressly, or by *necessary implication,* within the line of his duty under his employment." We have seen that there was no express authority for the daughter to take the vehicle on the occasion of the accident, nor can we perceive that by *necessary implication* her use of it for her own purposes was within the line of her duty under her assumed implied employment.

In *Evers* v. *Krouse,* 41 *Vroom* 653, the case last cited received again the approval of this court, and it was further stated that "an act done by the servant while engaged in the work of his master may be entirely disconnected therefrom, done not as a means or for the purpose of performing that work, but solely for the accomplishment of the independent * * * purpose of the servant. Such an act is not, as a matter of fact, the act of the master in any sense, and should not

be deemed to be so as a matter of law. As to it the relation of master and servant does not exist between the parties, and for the injury resulting to a third person from it the servant alone should be held responsible." In that case the defendant's son had been entrusted with a garden hose with which to sprinkle his father's lawn, and while so engaged, deliberately turned the water upon a horse, frightening him, causing the injury complained of, and for which the father had been sued. The court then said: "The fact that he (the son) used the tool supplied to him for the doing of his father's work for the accomplishment of his own mischievous purpose did not make it an act within the scope of his employment, and did not render the defendant liable for the injury resulting therefrom."

While in that case the act was malicious, yet an act not malicious is within the enunciated principle, if such act is not expressly or by necessary implication within the scope of duty, and with regard to which it cannot be said that the servant was engaged in the performance of the act for the other. The act must be done for the purpose of executing the master's orders and doing his work, and while actually engaged in serving the master, and it is not enough to say that the injuries complained of would not have been committed without the facilities afforded by the servant's relation to his master. *Garretzen* v. *Duenckel,* 50 *Mo.* 104; *Howe* v. *Newmarch,* 12 *Allen* 49.

For a clear exposition of this principle, see *Morier* v. *St. Paul, &c., Railway Co.,* 31 *Minn.* 351.

The following are some recent authorities on this subject, with special relation to automobiles: *Stewart* v. *Baruch,* 103 *N. Y. App. Div.* 577; *Clark* v. *Buckmobile Co.,* 107 *Id.* 120; *Reynolds* v. *Bach,* 127 *Iowa* 601; *Quigley* v. *Thompson,* 211 *Pa. St.* 107; *Patterson* v. *Kates,* 152 *Fed. Rep.* 481; *Slater* v. *Advance Thresher Co.,* 97 *Minn.* 305; *Evans* v. *Dyke Automobile Co.,* 121 *Mo. App.* 266; *Lotz* v. *Hanlon,* 217 *Pa. St.* 339; *Lewis* v. *Amorous* (*Ga.*), 59 *S. E. Rep.* 338; *Jones* v. *Hoge,* 47 *Wash.* 663.

Undoubtedly liability might be visited upon the father, but upon quite different grounds. If the machine had been bought for his children's use, and it was in its nature or use a menace to the safety of others, then, under the theory illustrated in *Van Winkle* v. *American Steam Boiler Co.,* 23 *Vroom* 240, it might well be that liability would arise by reason of the father's entrusting a dangerous machine or agency to the hands of an inexperienced or incompetent person. Such a liability does not rest upon the negligence of the servant, but upon the father's negligence in permitting his child to use a dangerous machine. In the one the gist of the action is the negligence of the servant imputed to the master; in the other, the negligence of the father. This distinction is thus stated in 29 *Cyc.* 1665: "The mere relation of parent and child imposed upon the parent no liability for the torts of the child committed without his knowledge or authority, expressed or implied; and, although when a parent authorized his child to act as his agent or servant in any matter he is liable for the torts of the child committed in the course of the employment, this liability does not grow out of the relation of parent and child, but is based upon the relation of principal and agent or master and servant, and is governed by the principles applicable to such relations. So, also, while the parent may be liable for an injury which may be caused directly by the child, where by his negligence he made it possible for the child to cause the injury complained of, and probable that the child would do so, this liability is based upon the rules of negligence rather than the relation of parent and child."

We are not at liberty to consider this possible liability, for there could not be any finding of fact against the defendant to this effect; it appearing from the bills of exception that the trial judge excluded from the consideration of the jury that question of fact by his instruction that unless there was agency there was no liability. *Fielders* v. *North Jersey Street Railway Co.,* 39 *Vroom* 343. It was therefore error to refuse to direct a verdict for the defendant.

Error has also been assigned upon exception taken to the charge. The defendant requested the court to charge: "If at the time of the accident Miss Thomsen was using the machine for her own pleasure and without reference to the defendant's business, then there must be a verdict for the defendant."

This the court refused, and instead charged: "When you come to consider the defendant's business * * * it is the business for which he bought this machine, that is, the business of the defendant. * * * It was the particular business for which he bought this machine. Was this servant engaged in operating that machine for the purpose for which her father bought it? Was she operating it for her own pleasure in the way that she has testified to? If she took that machine out at that time in pursuance of a general authority of her father to take it whenever she pleased for the pleasure of the family and for her own pleasure, for the purpose for which the master bought it, for the purpose for which her father owned it, for the purpose for which he expected her to operate it, then she was the servant of the father. Under those circumstances, that was the business for which the father bought the machine. If she did not have this general authority from her father, if she took this machine out for her own recreation, amusement and pleasure, contrary to the authority of her father, and this accident occurred, while she may be liable, the father is not, I charge the sixth request to charge, with the qualification which I have stated to the jury."

This makes the defendant's liability to depend upon the object for which he purchased the machine, which was for the pleasure of the family; in connection with the fact that his daughter operated it for that purpose, the jury being instructed that thereby she became his servant. This is contrary to the doctrine of *Evers* v. *Krouse,* 41 *Vroom* 653. It would subject a parent to liability if he bought for his son a baseball, or for his daughter a golf club, and by permitting them to be used by his children for their appropriate purposes, injury occurred.

It bases the creation of the relation of master and servant upon the purpose which the parent had in mind in acquiring ownership of the vehicle and its permissive use by the child. This proposition ignores an essential element in the creation of that *status* as to third persons, that such use must be in furtherance of and not apart from the master's service and control, and fails to distinguish between a mere permission to use and a use subject to the control of the master and connected with his affairs.

The reason for liability is founded upon the idea of control which a master has over his servant.

The court, although attempting to rest the liability upon the relation of master and servant, yet actually tested the liability by the fact that she was entrusted with the operation of the machine for her own pleasure, if purchased for that object, whereby she, *ipso facto,* became a servant. So that the charge thus in fact left the legal relationship of master and servant out of account and raised it in name only, because the daughter was allowed to drive the machine. In this there was also error.

The judgment must be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL, J.J. 15.