JOHNSTON *v.* CORNELIUS.

1. TRIAL—EVIDENCE—DISCONTINUANCE—DEMURRER TO EVIDENCE—
   DIRECTING VERDICT.

   Where an action is brought against more than one defend-
   ant, and plaintiff does not care to dismiss as to any one
   of them, he need not do so, under Circuit Court Rule 43,
   § 3, yet, if there be no evidence as to any defendant joined
   in the action, the court may, and properly did, direct a
   verdict against plaintiff and in favor of the particular
   defendant, according to Act No. 182, Pub. Acts 1899, 3
   Comp. Laws 1915, § 12628, relating to demurrers to the
   evidence.

2. AUTOMOBILES—DEATH—NEGLIGENCE—AGENCY—MASTER AND SER-
   VANT.

   Where the death of plaintiff's decedent was caused by de-
   fendant's automobile while it was being driven by the
   minor son of the owner, without his knowledge or author-
   ity, defendant was not responsible on the theory that he
   had knowledge of the son's incompetency and was charge-
   able with having allowed the son to operate a dangerous
   agency, nor did the fact that defendant owned the car
   furnish any presumption of liability.

3. SAME—AGENCY—NEGLIGENCE.

   To create a liability the act must have been within the
   scope of the son's employment and in conducting what
   was properly the father's business.

4. SAME—DIRECTED VERDICT—COURT—JUDGMENT.

   The trial court did not commit error in directing a verdict
   in favor of the father, at the close of the plaintiff's case,
   or discharging the jury which disagreed as to the other
   defendant, and was authorized to enter an order describ-
   ing the proceeding as a verdict for the party in whose
   favor the direction was given.

5. SAME—AGENCY—KNOWLEDGE.

   Where the testimony of the son was somewhat contradict-
   ory and tended to impeach him, but, leaving it out of con-
   sideration, there was no evidence of an agency, the court
   did not err in holding that the owner was not liable for

a death arising while the car was being used by the minor son.

Error to Kent; Perkins, J. Submitted June 14, 1916. (Docket No. 100.) Decided September 26, 1916.

Case by Eleanor M. Johnston, executrix of the last will and testament of Andrew W. Johnston, deceased, against Harold C. Cornelius and Russell Cornelius for the negligent killing of plaintiff's testate. Judgment for defendant Harold C. Cornelius on a directed verdict. Plaintiff brings error. Affirmed.

*Ellis & Ellis* (*C. G. Turner* and *Francis A. Stace*, of counsel), for appellant.

*Lombard, Hext & Washburn*, for appellee.

STONE, C. J. This is an action brought by the plaintiff, as executrix of the last will and testament of Andrew W. Johnston, deceased, against Harold C. Cornelius and Russell Cornelius for damages resulting from injuries to plaintiff's decedent, occasioned by an automobile owned by defendant Harold C. Cornelius, and being driven and operated by Russell Cornelius, the infant son of Harold C. Cornelius, about 9 o'clock on the evening of November 28, 1913, and from which injuries Mr. Johnston died on December 12, 1913.

At the trial and at the conclusion of the plaintiff's testimony, upon motion of defendant Harold C. Cornelius, the trial court entered an order discharging said defendant from liability, and the jury disagreed as to the liability of the son, Russell Cornelius. From the judgment in favor of defendant Harold C. Cornelius, the plaintiff has brought the case here on error, and we have only to deal with that judgment; as there has been no verdict or judgment as to the defendant Russell Cornelius.

Andrew W. Johnston was a resident of Grand Rapids. On the 28th of November, 1913, about 9 o'clock in the evening, he left his home on the east side of North avenue, in said city, and accompanied a Miss Van Winkle to the street car on Michigan street, which latter street runs east and west. It was a dark, rainy night, and Mr. Johnston was carrying an umbrella. Upon leaving Mr. Johnston's home the evidence tended to show that the parties went south on the east side of North avenue until they arrived at the intersection of the sidewalk on the north side of Michigan street, at which point they stopped and looked east up Michigan street, and saw a street car approaching approximately 100 feet away. They did not see any automobile. They then turned west and stepped down into North avenue, at its intersection with Michigan street, and walked diagonally across such intersection to a point in Michigan street south of the west sidewalk of North avenue, and a few feet from the car tracks. As they stopped and were about to take the street car they were struck and run over by an automobile owned by the defendant Harold C. Cornelius, and being driven west and operated by Russell Cornelius, a boy 17 years old and the son of said Harold C. Cornelius. Mr. Johnston was dragged for some distance under the automobile, and received serious injuries from which he died as above stated. The declaration alleged the joint liability of the defendants. There were six counts. The first count alleged that the defendant Russell Cornelius was the son and employee of the defendant Harold C. Cornelius, and was a member of his family, and a boy of immature years, to wit, 17 years, and was a careless, reckless, and negligent operator and driver of said automobile, all of which was well known to the defendant Harold C. Cornelius, and that said Harold C. violated his duty in allowing, and not preventing his automobile from being taken control of, operated, or driven on Michi-

gan street by such an incompetent, incapable, and careless operator and driver.

The second count alleged that the automobile was a pleasure vehicle, which was then and there driven by Russell Cornelius, who was an unlicensed chauffeur, and minor son and member of the family of the defendant Harold C. Cornelius, and was then and there the representative, servant, agent, and employee of the said Harold C. Cornelius, and the count was based upon the breaches of statutory duties.

The third count alleged the same, with the additional statement that the defendant Russell Cornelius was driving the automobile with the permission, knowledge, and consent and in and about the business of the said defendant Harold C. Cornelius, and alleged a breach of the ordinances of the city of Grand Rapids.

The fourth count made the same allegations concerning the agency of Russell Cornelius and knowledge of defendant Harold C., and alleged a breach of duty in not stopping said automobile and preventing the same from running over or upon said Johnston, etc.

The fifth count alleged that the defendant Harold C. Cornelius was the owner and was possessed of an automobile of large size, and capable of being driven at more than 25 miles an hour, and that when driven recklessly, carelessly, and negligently it became dangerous to the safety of persons upon the streets and highways, that Harold C. Cornelius knew that his son was a careless, reckless driver, and that it was the duty of Harold C. Cornelius not to permit or authorize said Russell Cornelius to take or use said automobile, and that Harold C. Cornelius violated his duty to the public by permitting Russell Cornelius to drive said automobile, when he knew that Russell was a careless, reckless, and negligent operator and driver of automobiles, and was a boy of immature years.

The sixth count is like unto the fifth, and also alleges

that Harold C. Cornelius went away from home and left said automobile in the care and keeping of Russell, knowing that the latter might take the automobile, and drive and operate the same on the public streets, as he had done before, and that Russell, in violation of law, wilfully and maliciously and without the consent of Harold C. took the automobile and drove the same upon the public streets, and that he wilfully, maliciously, wantonly, and recklessly drove and operated the same at, to wit, 20 miles per hour at, against, and over the said Johnston.

The injuries sustained by Johnston were fully set forth in each count, with claim for damages.

Upon the trial the plaintiff called the defendant Russell Cornelius for cross-examination under the statute. We have read his testimony and the entire record with great care, and we think that it may be stated that it is undisputed that the son, Russell, at the time of the accident, had no right or authority to take the car from the garage; that he had no rightful personal control whatever over this automobile, and never had had any such control. He was not a licensed chauffeur, and while he frequently operated the car in going after his father at the factory where the latter's business was, or in taking his mother or grandmother, or both, or even other members of the family out to drive, or for his own use, it was always done under the supervision, consent, or direction of one of the parents; that he never had any right to take the automobile out, without first obtaining permission to do so either from his father or mother. It appeared that on one occasion he had taken the car without consent. This was about one year before the accident. He was then punished for doing so by being refused the use of the car for himself for two weeks. It further appeared that he had never attempted to interfere with, or use the car of his own volition for about one year before this

night.  On the night in question his father and mother had gone out to dinner with some friends, using their electric car, leaving the one in question in the garage. It further appeared that on that occasion they instructed Russell, the son, to remain at home and care for a younger brother, and he had no permission to take the car out.  After the departure of his parents he did take the car out, took his younger brother to a neighbor's home, who were friends of the family, and left him there, and from there he drove to the corner of Prospect avenue and Michigan street, where he met and took out to ride a young woman, a friend of his. They then drove down town, a distance of about a mile, and went to a place known as "Sweet's" where ice cream, etc., are served. Following this he started to take the young lady back home.  It was while going west on Michigan street, and when only about 250 feet from the young lady's home, that the unfortunate accident occurred.

In the course of the examination of Russell Cornelius by the plaintiff he was interrogated as to certain testimony given by him before the coroner relating to matters that occurred at the time of the accident, and such testimony before the coroner was offered by the plaintiff as tending to impeach the witness.  As we have already said, at the close of the plaintiff's testimony defendants' counsel moved the court to direct a verdict of no cause of action in favor of the defendant Harold C. Cornelius for the following reasons:

(1) "Because the plaintiff has failed to establish any liability on the part of said defendant Harold C. Cornelius for the injuries complained of in the plaintiff's declaration."

(2) "That it has appeared from the undisputed evidence in the case that the automobile in question was at the time of the accident being operated by defendant Russell Cornelius, for his own pleasure, without the

knowledge, consent, approval, or permission of the defendant Harold C. Cornelius."

(3) "Because, under the undisputed evidence in the case, said automobile was, at the time of the injury complained of, being operated by defendant Russell Cornelius, without the knowledge, consent, approval, or permission of said defendant Harold C. Cornelius, and against his express instructions, given by him to said Russell Cornelius."

After a lengthy discussion of the question, the court granted the motion placing its decision upon the rule stated in *Loehr* v. *Abell*, 174 Mich. 590 (140 N. W. 926), and *Daugherty* v. *Thomas*, 174 Mich. 371 (140 N. W. 615, 45 L. R. A. [N. S.] 699, Am. & Eng. Ann. Cas. 1915A, 1163).

Counsel for plaintiff contended that the plaintiff was not bound by the testimony of Russell Cornelius, under the statute; that, evidence having been received tending to impeach him upon material matters, it was for the jury to say whether he had sworn falsely in all particulars.

After the ruling of the court, which was duly excepted to, the jury were called in and the court said:

"Well, gentlemen of the jury, this case from now on will proceed as against only one of the defendants, and that is Russell Cornelius, the son. A motion has been made, argued, and determined in your absence as to both of these defendants, on a request to take the case from the jury and direct a verdict in favor of the defendants. That motion has been granted as to the defendant Harold C. Cornelius, based upon a recent decision of the Supreme Court that, where, under circumstances similar to the circumstances in this case, the father was the owner of an automobile, and the son, with a general knoweldge of the father that the son used the automobile, took the automobile on one occasion, and used it for his own pleasure and advancement, and an injury resulted, the father is not liable for the negligence on the part of the son in running an automobile and consequent damages;

that, if any one is liable, it would be the son, because the relation of master and servant or principal and agent does not exist between the father and son, under those circumstances; and, while it may be inferred that the father gives permission to the son to use an automobile which is bought for the family use, that inference is not sufficient to create a personal liability against the father for the son's own tortious act, when the son is using the machine for himself, and not for the father, or other members of the family. On those grounds I have directed a verdict, and I will at the proper time direct you to render a verdict of no cause of action as against the defendant Harold C. Cornelius."

The trial then proceeded against the defendant Russell Cornelius, and testimony pro and con as to his liability was received. In its charge to the jury the court made no reference to the defendant Harold C. Cornelius, and the jury were not instructed to return any verdict of any kind as to him. The jury, after being out for a time, were unable to agree as to the liability of the defendant Russell Cornelius, and were finally discharged. When the court announced its decision that it was going to direct a verdict in favor of Harold C. Cornelius, no order was entered by the court in the journal, and no order was actually entered in the journal until some days after the termination of the trial, and after the jury were discharged, and then an order was entered in the journal under the date of the said announcement, as follows:

"In this cause, the parties by their respective attorneys and the jury heretofore duly impaneled being present in court, the trial was resumed, and the said jury sat together, and, after hearing further proofs and allegations of the said parties, said court orders and directs that a verdict of no cause of action as to defendant Harold C. Cornelius be rendered."

Here follows the judgment for said defendant in the usual form. We quote from the record:

"That in fact the jury was not directed to give any verdict in the cause, but was told by the court that he would direct them at the proper time, and that the final judgment of disagreement was entered in the journal at the close of the trial on the 28th day of May, and the part of the judgment of May 25th, after the word 'parties,' was an amendment to the journal entered some days after May 28, 1915."

Afterwards, on the 9th day of June, the plaintiff made a motion to set aside the order of the court made by the court as of the 25th day of May, and grant a new trial of said cause against both of said defendants. The motion was denied; the court filing its reasons therefor, which were duly excepted to by the plaintiff.

The following questions, properly raised by assignments of error, are discussed by counsel for appellant:

(1) "Could the circuit judge legally announce to the jury in the middle of the trial what the verdict as to Harold C. Cornelius would be, and inform the jury at that time that he would later direct a verdict in favor of the defendant Harold C. Cornelius?"

(2) "Was the plaintiff entitled to the presumption against Harold C. Cornelius arising from the ownership of the car, and was such presumption waived by the calling of Russell Cornelius?"

(3) "Did the court have a right to enter an order, and call it a verdict in the record, without submitting the question to the jury?"

(4) "Was the defendant Harold C. Cornelius free from all negligence, or should his conduct, under the evidence and the declaration, have been submitted to the jury?"

(5) "It being admitted that the automobile was bought and owned by defendant Harold C. Cornelius as a family car, was the question of agency of Russell Cornelius for the jury?"

1. The question here presented is whether the trial court had the right at the close of the plaintiff's case to direct a verdict in favor of a defendant against whom there was no evidence?

We have a statute which provides that upon the trial of any case the defendant, upon the conclusion of the plaintiff's testimony, may request the court to direct the jury to bring in a verdict for the defendant, or demur to the evidence, without resting his case absolutely. Act No. 182, Pub. Acts 1899, section 12967, 5 How. Stat. (2d Ed.) ; 3 Comp. Laws 1915, § 12628.

Counsel for appellant calls attention to former Circuit Court Rule 27, subd. *c*, which is now found in section 3 of Rule 43, and reads as follows:

"But in case an action is brought against two or more defendants, the plaintiff shall not be required to discontinue as to any of them, but the jury shall show by their verdict, or the court by its finding, in a trial by the court without a jury, which of them are and which of them are not liable to the plaintiff, and judgment shall be given accordingly."

In *Pruner* v. *Railway,* 173 Mich. 146 (139 N. W. 48). this subdivision of the rule was referred to. In that case we affirmed a judgment against the railway, where the trial court at the close of the proofs directed a verdict in favor of the city of Detroit, and submitted the case to the jury on the liability of the railway. See, also, *Mally* v. *Wrapper Co.,* 181 Mich. 568 (148 N. W. 443), and cases cited.

In *McPherson* v. *Pinch,* 119 Mich. 36 (77 N. W. 321), it was held that, where one of the parties admitted his liability under this subdivision of the rule, the jury should have been instructed to render a verdict against him, provided they did not find a third party liable. We are of opinion that there is nothing in this rule that interferes with the court's authority and duty to direct a verdict in behalf of any joint defendant against whom there is no evidence of liability, at the close of the plaintiff's case.

2. We do not think the ownership of the car by Harold C. Cornelius furnished any presumption of liability

under the undisputed facts in the case. The real question involved is whether or not, at the time of the accident, Russell was using the car in his own behalf and for his own pleasure. In our opinion, the case is ruled by our own decisions. *Loehr* v. *Abell, supra; Daugherty* v. *Thomas, supra; Hartley* v. *Miller,* 165 Mich. 115 (130 N. W. 336, 33 L. R. A. [N. S.] 81); *Riley* v. *Roach,* 168 Mich. 294 (134 N. W. 14, 37 L. R. A. [N. S.] 834).

As was said by Knappen, J., in *Denison* v. *McNorton,* 228 Fed. 401, 142 C. C. A. 631:

"The father is not liable for the son's alleged negligence merely because of such relationship; his liability, if any, must rest upon the relationship of principal and agent, or that of master and servant. Defendant's mere ownership of the machine is not enough to create liability for his son's negligence. *Lotz* v. *Hanlon,* 217 Pa. 339 [66 Atl. 525] 10 L. R. A. (N. S.) 202 [118 Am. St. Rep. 922, 10 Am. & Eng. Ann. Cas. 731]. To have that result the act complained of must have been done within the scope of the son's employment and in conducting what is called the father's business. *White Oak Coal Co.* v. *Rivoux,* 88 Ohio St. 18 [102 N. E. 302] 46 L. R. A. (N. S.) 1091 [Am. & Eng. Ann. Cas. 1914C, 1082]."

In the *Denison Case,* from which we have quoted, a judgment for the plaintiff against the father was affirmed, and it is cited by plaintiff's counsel. In that case the son was driving the car taking other members of the family on a trip to a resort for recreation. The case is readily distinguished from the instant case, as shown by the following language:

"A significant feature of this case, which distinguishes it from some of the cases relied on by defendant, is the fact that all the members of defendant's family (so far as at home) were participating in the use of the car; there being no other occupant except a family guest. The importance of this consideration is illustrated by the cases of *Doran* v. *Thomsen,* 76

N. J. Law, 754 [71 Atl. 296, 19 L. R. A. (N. S.) 335, 131 Am. St. Rep. 677], and *Missell* v. *Hayes*, 86 N. J. Law, 348 [91 Atl. 322]. In the former case the father was held not liable for the negligence of his daughter in driving the car for her own pleasure, notwithstanding its purchase by the father for the use of his family, and his implied consent that the daughter use it for the purpose stated. In the latter case, where the accident occurred while one of the sons was driving the car, which contained also defendant's wife and daughter, together with a guest of the son and a guest of the daughter, the facts were held sufficient to support a finding that the son was acting as the servant of his father, and within the scope of his employment as such. The fact that the car was occupied by the father's immediate family and their guests was held to distinguish the case from *Doran* v. *Thomsen*."

3. We are of the opinion that the court did not err in directing the verdict and judgment for the defendant Harold C. Cornelius in the manner shown in the record. Manifestly, if the court had the right to direct the verdict and did direct it, the jury had no duty to perform in the matter, and we think the court had the power to amend the record to show the facts. We find no error here.

4. We think that the fourth question should be answered by stating that, under the undisputed evidence, the defendant Harold C. Cornelius was not guilty under any count in the declaration.

5. We think that the fifth question has already been answered, and that there was no evidence of the agency of Russell Cornelius. Counsel for appellant complain that they were not permitted to go to the jury upon what they term the conflicting testimony of Russell. The tendency of the claimed contradictory statements would have been to impeach him. The difficulty is that, with Russell's testimony entirely eliminated from the case, there is nothing to show any liability of defendant Harold C. Cornelius under our decisions, and

we are only concerned here with the question of his liability.

Finding no error in the record, the judgment of the court below is affirmed.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.