No. 22,631.

J. C. PIXLEY, *Appellee*, v. M. D. GONDER, *Appellant*.

SYLLABUS BY THE COURT.

REAL-ESTATE AGENT — *Purchaser Introduced* — *Sale Made* — *Commission Earned.* The evidence considered, and held sufficient to sustain the verdict, which was one in favor of a real-estate agent, for commission for services rendered in connection with the sale of land.

Appeal from Edwards district court; ALBERT S. FOULKS, judge. Opinion filed April 10, 1920. Affirmed.

*F. Dumont Smith,* of Hutchinson, for the appellant.

*A. L. Moffat,* and *F. L. Slaughter,* both of Kinsley, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by Pixley, a real-estate agent, to recover from Gonder, a landowner, commission for services rendered in selling the land to Strassburg. The plaintiff recovered, and the defendant appeals.

Pixley's employment was not in writing, and the land was not listed for sale on specified terms. Gonder hoped to sell it for $8,500, and Pixley was to offer it at that price; but Gonder was to conduct his own negotiations and close his own deal; all Pixley was to do was to find a man who would buy, and if Gonder sold to the person produced, Pixley was to have a commission of $400, whatever the terms of sale.

Pixley lived at Kinsley, Gonder lived at Cimarron, Strassburg lived north of Belpre, and the land lay southeast of Kinsley. Pixley interested Strassburg in the land, and notified Gonder. Gonder came to Kinsley, and he and Pixley accompanied Strassburg to the land. After examining the land, Strassburg expressed himself as satisfied with it, but he did not wish to purchase until his wife had seen it. Besides that, the tract contained only 160 acres, and he wanted to wait and see if he could not get a half section. He said he wanted to show the land to his wife first, and if she were satisfied he would take it, providing he could get a half section. He fur-

ther said that Pixley and Gonder need not bother him any more until the weather got better, and until he ascertained if he could get a half section. Pixley suggested that Gonder might sell to some one else. Strassburg replied that as soon as he could take his wife to the land he would do so, but if Gonder sold, to let it go. So the matter rested on February 5. A day or two later, at Gonder's suggestion, Pixley telephoned Strassburg, and found him to be in the same frame of mind as on February 5. About a week before May 2 Gonder visited Strassburg's home. Strassburg was away at work, and Gonder talked to Mrs. Strassburg. Gonder then went to the place where Strassburg was at work, and told Strassburg he would return within a week. On May 2 Gonder and Strassburg met by appointment in Kinsley, went to the land, and concluded a contract of sale on terms satisfactory to Gonder. At no time before the sale did Strassburg tell either Pixley or Gonder that he had concluded not to buy.

Gonder's version of the contract of employment was that Pixley was to receive nothing unless a sale were made on February 5, for $8,600 net to Gonder. He said the time limit was imposed because other agents had mentioned Strassburg to him. In connection with other pertinent instructions, the court advised the jury that when a real-estate agent is limited with respect to the time in which he may negotiate a sale, he is not entitled to a commission if a purchaser produced by him buy of the owner after expiration of the time, unless the delay occurred through fault of the owner. The verdict closes the controversy relating to the terms of the agency.

The court instructed the jury to the effect that if an agent be, in fact, the procuring cause of a sale, it is not essential to recovery of a commission that the purchaser produced by him should be ready, able and willing to buy at the time the land was shown, and further instructed the jury as follows:

"If you find from the evidence in this case that the negotiations to sell the land belonging to the defendant were set on foot by the plaintiff, and that such negotiations had definitely failed and spent their force, and that the sale finally consummated was the result of new and independent negotiations not connected with the acts of the plaintiff, then your verdict should be for the defendant."

The propriety of these instructions is not disputed, and it is

conceded the decision must turn on whether or not the transaction of May was related to the transaction of February—that is, whether or not the evidence sustains the verdict. The portions of the evidence most favorable to the plaintiff have been recited, and they fall far short of disclosing failure of the first negotiations. On the other hand, the prospective purchaser was satisfied with the land, and was willing to buy it, on two conditions, however, which required time to fulfill. Pixley had nothing further to do. It was distinctly stipulated that Gonder would close his own deal, which he was well qualified to do, as the result proved. He might take his own time to complete negotiations; but the prospect of sale to Strassburg was sufficiently promising that it would have been quite strange if Gonder had dropped him. As soon as Gonder did press the negotiations further, he sold the land.

Pixley called Strassburg as a witness. On cross-examination, Strassburg testified he had turned down the deal, and had given it up completely; he had given up the quarter; Gonder interested him again, after he had given up the deal; he had no idea of looking at the land again; he would not have looked at it again if Gonder had not taken him to it, and he would not have purchased if Gonder had not come back. It is urged by the defendant that this testimony satisfies all the conditions of the quoted instruction.

The full abstract of Strassburg's testimony presents some features which the jury may have considered sufficient to impair the effect of the portions just stated. The demeanor of the witness, or some significant incident of the trial, may have convinced the jury he was coloring his testimony in order to help Gonder. Besides this, the mere fact that Strassburg had decided not to buy did not, as a matter of law, defeat the action. The jury could still consider the fact in connection with other facts and circumstances, and the jury probably looked at the matter in this way: Gonder had reserved to himself a function usually performed by the agent, overcoming resistance of the customer's mind, and inducing him to buy. Strassburg's uncommunicated conclusion not to buy did not affect Gonder's conduct. When Gonder went to see Strassburg the second time, he did not do so on the basis that previous negotiations had

definitely and finally failed. Gonder had received no information to that effect. To Gonder the negotiations were merely in temporary suspension. Strassburg remained just what he was on the evening of February 5—an interested prospective purchaser, who had taken the matter of purchase under consideration. Taking advantage of Pixley's production of workable material, and following up the work done on February 5, Gonder made an easy sale on May 2, and Pixley's part of the contract was fulfilled. He produced a man to whom Gonder sold his land. It was the jury's province and duty to appraise credibility, to weigh testimony, and to draw reasonable inferences from the testimony; and under the circumstances, this court is not authorized to say that the jury disregarded the instruction and returned a verdict contrary to the evidence.

There is nothing else of importance in the case, and the judgment of the district court is affirmed.