BOWERMAN *v.* SHEEHAN.

1. CONSTITUTIONAL LAW—STATUTES—COURTS MAY NOT ENCROACH
ON POWER OF LEGISLATURE.
   In determining whether a statute is constitutional, the
   court may not consider whether, had it been the legislature,
   it would have favored its enactment, nor may it seek for
   some hidden or abstruse meaning in one or more clauses
   of the Constitution to annul the law, since to do so would
   be to encroach on the power of the legislature and make
   the Constitution instead of construe it.

2. SAME—LEGISLATURE MAY ALTER OR REPEAL COMMON LAW.
   The legislature may alter or repeal the common law, and
   may create new offenses, enlarge the scope of civil remedies,
   and fasten responsibility for injuries upon persons against
   whom the common law gives no remedy.

3. STATUTES — OFFICE OF STATUTES IS TO REMEDY DEFECTS IN
COMMON LAW.
   The great office of statutes is to remedy defects in the
   common law as they are developed, and to adapt it to the
   changes of time and circumstances.

4. CONSTITUTIONAL LAW — DISTINCTION BETWEEN FEDERAL AND
STATE CONSTITUTIONS.
   The distinction between the Constitution of the United
   States and a State Constitution is that under the former
   a power not conferred by the express terms of the in-
   strument or by necessary implication may not be exercised,
   while the purpose and object of a State Constitution are
   not to make specific grants of legislative power, but to
   limit that power which would otherwise be general or un-
   limited.

5. SAME—LEGISLATURE MAY ENACT ANY STATUTE NOT PROHIBITED
BY CONSTITUTION.
   Since under the State Constitution the legislature has
   power to enact a statute unless it has been prohibited,
   the court, in declaring a statute unconstitutional, should

¹Constitutional Law, 12 C. J. § 390; ²Id., 12 C. J. § 237; ³Statutes,
36 Cyc. p. 941; ⁴Constitutional Law, 12 C. J. § 167; ⁵Id., 12 C. J.
§ 222.

be able to lay its finger on the part of the Constitution violated, and the infraction should be clear, and free from reasonable doubt.

6. Same—Statute Should be Upheld by Court Unless Clearly Prohibited—Doubt Resolved in Favor of Statute.

As between two possible interpretations of a statute, by one of which it would be unconstitutional, and by the other valid, it is the duty of the court to adopt that which will save the act, and even to avoid a serious doubt the rule is the same.

7. Same—Property Held Subject to General Police Power.

All property is held subject to the general police power vested in the legislature to regulate and control its use so as to secure the general safety, and this power is incapable of any exact definition or limitation, because none can foresee the ever-changing conditions which may call for its exercise.

8. Motor Vehicles—Dangerous Instrumentality.

While a standing automobile is not a dangerous instrumentality, the moment it begins to move, unless in the hands of a careful person, it becomes such.

9. Constitutional Law—Motor Vehicles—Statutes—Arbitrary or Oppressive.

1 Comp. Laws 1915, § 4825, which requires a father, who permits his minor child to drive his car, to compensate for damages caused by his or her recklessness in so driving, may not be said to be "arbitrary or oppressive" within the meaning of the Constitution.

10. Insurance—Motor Vehicles—Liability Insurance—Insurer Not Liable Unless Owner Liable.

Although the owner of an automobile carry insurance protecting him against liability under 1 Comp. Laws 1915, § 4825, no liability would be imposed on the insurer if the act is invalid, since the insurer may make any defense that the insured could make.

11. Constitutional Law—Motor Vehicles—Police Power.

1 Comp. Laws 1915, § 4825, should be sustained as a valid exercise of the police power upon the broad principle that he who owns property, in its nature a dangerous instru-

⁶Constitutional Law, 12 C. J. § 220; ⁷Id., 12 C. J. § 416; ⁸Motor Vehicles, 42 C. J. § 16; ⁹Id., 42 C. J. § 876; ¹⁰Liability Insurance, 36 C. J. § 75.

mentality when recklessly operated, will not be permitted to suffer it to be handled by a member of his immediate family, over whom he has full control, in such a negligent manner as to inflict injury upon another without responding in damages therefor.

FELLOWS, NORTH, and WIEST, JJ., dissenting.

Error to Isabella; Hart (Ray), J. Submitted June 8, 1927. (Docket No. 36.) Resubmitted March 27, 1928. Decided April 3, 1928.

Case by Evart Bowerman, an infant, by his next friend, against James Sheehan for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*T. Carl Holbrook* and *F. H. Dodds,* for appellant.

*F. H. Dusenbury,* for appellee.

SHARPE, J. The question presented in *Hawkins* v. *Ermatinger,* 211 Mich. 578, is again before us. In that case the judgment of the trial court, based on a holding that, under section 4825, 1 Comp. Laws 1915, recovery might be had against the owner of a motor vehicle, when negligently driven by an immediate member of his family, was affirmed by an equal division of this court. The law is again attacked as unconstitutional.

When such a claim is made, what is the test to be applied by a court? This question received thoughtful consideration in the early case of *Sears* v. *Cottrell,* 5 Mich. 251. That decision has been cited and quoted from more frequently than any other in our official Reports, and always with approval. It may be read in its entirety with much profit. The quotations herein are taken from it except as otherwise indicated.

We have no right to consider whether, had we been

242—Mich.—7.

members of the legislature, we would have favored
its enactment, nor "seek for some hidden or abstruse
meaning in one or more clauses of the Constitution, to
annul a law." If we do, so, we will "encroach on the
power of the legislature, and *make* the Constitution
instead of *construing* it," and thereby "declare what
the Constitution should be—not what it is. The
tendency of courts at the present day, we think, is
too much in that direction." Neither should we con-
sider whether this law is in harmony with the rules
of the common law.

"There is no such limit to legislative power. The
legislature may alter or repeal the common law. It
may create new offenses, enlarge the scope of civil
remedies, and fasten responsibility for injuries upon
persons against whom the common law gives no
remedy." *Bertholf* v. *O'Reilly*, 74 N. Y. 509 (30 Am.
Rep. 323), quoted approvingly in *Rhodes* v. *Sperry &
Hutchinson Co.*, 193 N. Y. 223 (85 N. E. 1097, 34 L.
R. A. [N. S.] 1143, 127 Am. St. Rep. 945).

"A person has no property, no vested interest, in any
rule of the common law. That is only one of the forms
of municipal law, and is no more sacred than any
other. Rights of property which have been created
by the common law can not be taken away without
due process; but the law itself, as a rule of conduct,
may be changed at the will * * * of the legis-
lature, unless prevented by constitutional limitations.
Indeed, the great office of statutes is to remedy de-
fects in the common law as they are developed, and
to adapt it to the changes of time and circumstances."
*Munn* v. *Illinois*, 94 U. S. 113, 134, quoted approvingly
in *Second Employers' Liability Cases*, 223 U. S. 1, 50
(32 Sup. Ct. 169, 38 L. R. A. [N. S.] 44).

The distinction between the provisions of the Con-
stitution of the United States and our State Consti-
tution must not be lost sight of. Under the former,
"a power not conferred by the express terms of the
instrument, or by necessary implication, cannot be
exercised." "The purpose and object of a State Con-

stitution are not to make specific *grants* of legislative power, but to *limit* that power where it would *otherwise* be *general* or *unlimited.*" "In the *one* case, therefore, the inquiry is: Has the power in question been *granted?* in the *other:* Has it been prohibited?" If "not prohibited by the express words of the Constitution, or by necessary implication," it "cannot be declared void as a violation of that instrument." The true test, then, seems to be, that, to declare a statute unconstitutional, "we should be able to lay our finger on the part of the Constitution violated, and that the infraction should be clear, and free from a reasonable doubt." *Tyler* v. *People,* 8 Mich. 320, 333. See, also, *Moore* v. *Harrison,* 224 Mich. 512, 515.

In *Blodgett* v. *Holden,* U. S. Adv. Ops. 1927, 28, p. 67 (48 Sup. Ct. 105), Mr. Justice Holmes said:

"Although research has shown and practice has established the futility of the charge that it was a usurpation when this court undertook to declare an act of congress unconstitutional, I suppose that we all agree that to do so is the gravest and most delicate duty that this court is called on to perform. Upon this, among other considerations, the rule is settled that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act. Even to avoid a serious doubt the rule is the same."

No attempt is made by counsel for the appellant to point out wherein the Constitution prohibits the enactment of such a law. It cannot be said to impair the obligation of contracts, nor can it be said to deprive the owner of liberty or property without due process of law. It interferes with the use of property by a restriction imposed thereon for the protection and safety of the public.

"It is not disputed that the State may regulate the use of private property, when the health, morals, or welfare of the public demands it. Such laws have

their origin in necessity." *People* v. *Smith*, 108 Mich. 527 (32 L. R. A. 853, 62 Am. St. Rep. 715).

"It is a settled principle, growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community." *Commonwealth* v. *Alger*, 7 Cush. (Mass.) 53, as quoted in 211 Mich. 586.

It is urged, however, that the provisions of the act are arbitrary and oppressive. This law was enacted in the exercise of the police power.

"It is elementary that all property is held subject to the general police power to regulate and control its use so as to secure the general safety." *Peninsular Stove Co.* v. *Burton*, 220 Mich. 284, 286.

Such power is vested in the legislature. It has frequently been said that this power is "incapable of any exact definition or limitation, because none can foresee the ever-changing conditions which may call for its exercise." 6 R. C. L. p. 184. It has been said that laws touching the regulation of morals, manners, or property are all enacted as experiments to fit conditions of time and place. The automobile is with us. There are few homes in which one may not be found. Stress is laid upon our holding that "an automobile is not a dangerous instrumentality." *Brinkman* v. *Zuckerman*, 192 Mich. 624. But in *Stapleton* v. *Brewing Co.*, 198 Mich. 170, 175 (L. R. A. 1918A, 916), it was said that it may not be so classed "when intelligently managed." One has but to peruse the columns of the daily press, or travel upon our streets or highways, or even to read our recent opinions, to note that the safety of pedestrians or persons riding in vehicles is at all times endangered by reckless driving, and in such collisions the one exer-

cising due care usually receives the greater injury. It is true that a standing automobile is not a dangerous instrumentality, but the moment it begins to move, unless in the hands of a careful person, it certainly becomes such. How may such carelessness be controlled? We have criminal laws seeking to do so. Drivers are required to be licensed. That these laws do not prevent serious accidents, often resulting in death, is apparent. The punishment, criminally, of the one who has violated the law in no way recompenses the other for the injury sustained. There has been agitation looking to a law requiring all owners to carry liability insurance. The owner of a car who does not is today carrying such insurance himself when he is driving it or it is being driven by some person employed by him. But, when driven by his 14-year-old son or daughter, the person injured has no protection whatever except under this statute. Is it "arbitrary or oppressive" to require a father, who permits his minor child to drive his car, to compensate a neighbor for damages due to his or her recklessness in doing so? Is it not more so to hold a law invalid which so provides? It seems safe to say that most owners who are financially responsible carry insurance which protects them against liability under this act. That the policy is so written imposes no liability on the insurance company if the act is invalid. The insurer may make any defense that the insured could make.

*Daugherty* v. *Thomas*, 174 Mich. 371 (45 L. R. A. [N. S.] 699, Ann. Cas. 1915A, 1163), is again relied on as decisive of this case. If the statute there considered was *similar* to that before us, this contention would have force. The gist of that decision is thus stated by Mr. Justice STONE:

"To hold subdivision 3 of section 10 constitutional is to hold a party absolutely liable for the negligent conduct of another, a mere stranger or a wilful tres-

passer, no matter how careful or free from negligence he himself has been."

Is there any provision in the statute we are here considering under which an owner may be held liable for the negligent conduct of "a mere stranger or a wilful trespasser"? Can the immediate members of a person's family be so designated?

The *Daugherty Case* was decided in 1913. This statute was enacted in 1915. It is apparent that the purpose of the legislature was to so change the liability of an owner as to relieve it of the objectionable features in the former law.

The section of the motor vehicle law here involved was amended by Act No. 56, Pub. Acts 1927, § 29. It now provides:

"The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge. It shall be presumed that such motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of said injury by his or her father, mother, brother, sister, son, daughter, or other immediate member of the family."

Under it the owner is liable only if the vehicle be driven "with his or her express or implied consent or knowledge," but such consent and knowledge will be presumed if it be driven by an immediate member of the family.

It is difficult to perceive how this amendment affords any real protection to the owner. Under Act No. 33, Pub. Acts 1909 (3 Comp. Laws 1915, § 15431), "Every person who takes or uses without authority" a motor vehicle is subject to a fine or imprisonment. Should a member of the owner's family use the car and the defense be made, under the amendment above quoted, that it was without the owner's consent or knowledge, the proof offered to maintain such defense, if sufficient to do so, would render the person using

the car guilty under Act No. 33. The owner, when such a claim is made, will therefore be placed in a position where he must admit liability, if negligence be proven, or by his proof establish facts sufficient to sustain the criminal prosecution.

In passing upon the extent to which the police power may be exercised by the legislature of a State, the Supreme Court of the United States, in *Van Oster* v. *Kansas,* 272 U. S. 465, 467 (47 Sup. Ct. 133, 47 A. L. R. 1044), said:

"It is not unknown or indeed uncommon for the law to visit upon the owner of property the unpleasant consequences of the unauthorized action of one to whom he has entrusted it. Much of the jurisdiction in admiralty, so much of the statute and common law of liens as enables a mere bailee to subject the bailed property to a lien, the power of a vendor of chattels in possession to sell and convey good title to a stranger, are familiar examples. They have their counterpart in legislation imposing liability on owners of vehicles for the negligent operation by those entrusted with their use, regardless of a master-servant relation. Laws of New York, 1924, c. 534; Michigan Pub. Acts 1915, Act No. 302, § 29 (constitutionality upheld, *Stapleton* v. *Independent Brewing Co.,* 198 Mich. 170 [L. R. A. 1918A, 916]). They suggest that certain uses of property may be regarded as so undesirable that the owner surrenders his control at his peril. The law thus builds a secondary defense against a forbidden use and precludes evasions by dispensing with the necessity of judicial inquiry as to collusion between the wrongdoer and the alleged innocent owner. So here the legislature, to effect a purpose clearly within its power, has adopted a device consonant with recognized principles and therefore within the limits of due process."

In my opinion, this law should be sustained as a valid exercise of the police power upon the broad principle that he who owns property, in its nature a dangerous instrumentality when recklessly operated, will not be permitted to suffer it to be handled by a

member of his immediate family, over whom he has full control, in such a negligent manner as to inflict injury upon another without responding in damages therefor.

"The physical welfare of the citizen is a subject of such primary importance to the State, and has such a direct relation to the general good, as to make laws tending to promote that object proper under the police power." *People* v. *Havnor*, 149 N. Y. 195 (43 N. E. 541, 52 Am. St. Rep. 707, syllabus in 31 L. R. A. 689).

As was said in *People* v. *Schneider*, 139 Mich. 673, 679 (69 L. R. A. 345, 5 Ann. Cas. 790), the act "is merely a justifiable exercise of the police power in the interest of the safety of the traveling public."

The judgment is affirmed.

FEAD, C. J., and CLARK, McDONALD, and POTTER, JJ., concurred with SHARPE, J.

FELLOWS, J. (*dissenting*).    In the case of *Daugherty* v. *Thomas*, 174 Mich. 371 (45 L. R. A. [N. S.] 699, Ann. Cas. 1915A, 1163), this court held that a similar statute was in conflict with both Federal and State Constitutions because in effect it required a citizen to respond in damages for the tort of another. That case was consistently followed by this court (see *Loehr* v. *Abell*, 174 Mich. 590; *Mitchell* v. *Lumber Co.*, 175 Mich. 75; *Barry* v. *Metzger Motor Car Co.*, 175 Mich. 466; *Levyn* v. *Koppin*, 183 Mich. 232; *Johnston* v. *Cornelius*, 193 Mich. 115), until *Hawkins* v. *Ermatinger*, 211 Mich. 578, where this court was equally divided on the question of the validity of the act now before us, although all agreed that it created a liability, and went beyond prescribing a rule of evidence. The opinion in the *Daugherty Case*, written by Mr. Justice STONE, so fully considers the question then discussed that I shall not attempt to add to it or to the authorities there cited.. Its reasoning is, in my

judgment, controlling upon the question of the validity of the act now before us.

But the power here exercised by the legislature is of so doubtful a character for another reason that without resting decision on such other grounds, I do not think they should be overlooked.   They at least aid in fortifying the correctness of the decision in the *Daugherty Case* that the legislation was beyond the police power of the State and infringed constitutional rights.   I refer to the right of the individual to contract.   With due regard for the constitutional rights of the citizen, he may not be required to respond for the acts of another except upon the application of the doctrine of principal and agent or master and servant. There is a wealth of decision upon the so-called "family purpose" doctrine.   Several States sustain liability against the head of the family under that doctrine, among them see *Griffin* v. *Russell*, 144 Ga. 275 (87 S. E. 10, L. R. A. 1916F, 216, Ann. Cas. 1917D, 994); *Stowe* v. *Morris*, 147 Ky. 386 (144 S. W. 52, 39 L. R. A. [N. S.] 224); *Birch* v. *Abercrombie*, 74 Wash. 486 (133 Pac. 1020, 50 L. R. A. [N. S.] 59); *Ulman* v. *Lindeman*, 44 N. D. 36 (176 N. W. 25, 10 A. L. R. 1440); *Plasch* v. *Fass*, 144 Minn. 44 (174 N. W. 438, 10 A. L. R. 1446); *Hutchins* v. *Haffner*, 63 Colo. 365 (167 Pac. 966, L. R. A. 1918A, 1008); *Davis* v. *Littlefield*, 97 S. C. 171 (81 S. E. 487); *King* v. *Smythe*, 140 Tenn. 217 (204 S. W. 296, L. R. A. 1918F, 293).   While other States repudiate it as unsound, among them see *McGowan* v. *Longwood*, 242 Mass. 337 (136 N. E. 72, 23 A. L. R. 617); *Doran* v. *Thomsen*, 76 N. J. Law, 754 (71 Atl. 296, 19 L. R. A. [N. S.] 335); *Van Blaricum* v. *Dodgson*, 220 N. Y. 111 (115 N. E. 443, L. R. A. 1917F, 363); *Blair* v. *Broadwater*, 121 Va. 301 (93 S. E. 632, L. R. A. 1918A, 1011); *Myers* v. *Shipley*, 140 Md. 380 (116 Atl. 645, 20 A. L. R. 1460); *Watkins* v. *Clark*, 103

Kan. 629 (176 Pac. 131) ; *Parker* v. *Wilson,* 179 Ala. 361 (60 South. 150, 43 L. R. A. [N. S.] 87) ; *Reynolds* v. *Buck,* 127 Iowa, 601 (103 N. W. 946) ; *Arkin* v. *Page,* 287 Ill. 420 (123 N. E. 30, 5 A. L. R. 216) ; *Pratt* v. *Cloutier,* 119 Me. 203 (110 Atl. 353, 10 A. L. R. 1434) ; *Woods* v. *Clements,* 113 Miss. 720 (74 South. 422, L. R. A. 1917E, 357) ; *Elms* v. *Flick,* 100 Ohio St. 186 (126 N. E. 66) ; *Hays* v. *Hogan,* 273 Mo. 1 (200 S. W. 286, L. R. A. 1918C, 715 Ann. Cas. 1918E, 1127) ; *McFarlane* v. *Winters,* 47 Utah, 598 (155 Pac. 437, L. R. A. 1916D, 618). '

I think the reasoning of the cases sustaining the doctrine of "family purpose" fallacious and that this court in *Johnston* v. *Cornelius, supra,* joined the many other States in its repudiation.     It was well said by the court of appeals of Virginia in *Blair* v. *Broadwater, supra:*

"The books abound with cases holding for and against the parent's liability for the acts of his child in this class of cases.     The authorities are not reconcilable, and it seems to us that the only safe course to pursue is to revert to first principles and adhere to ancient landmarks, rather than to yield a too ready allegiance to an admittedly new principle sought to be engrafted upon the law of master and servant and principal and agent to meet supposed exigencies of new conditions incident to the advent of automobiles."

An examination of the cases cited demonstrates that the doctrine of "family purpose" is bottomed on the theory of principal and agent or master and servant. I quote a few excerpts from cases sustaining the doctrine:

"It must also be conceded that a parent is not liable for the torts of his child solely on the ground of relationship.     The liability, if any exists, must rest in the relation of agency or service." *Birch* v. *Abercrombie, supra.*

"The liability of the husband, if any exists, in this case, must be based upon the principal and agent or

master and servant theory." *Hutchins* v. *Haffner, supra.*

"Under well-settled principles, the defendant's liability must depend upon whether the son operating the automobile was his servant and engaged upon his business at the time the negligence occurred." *King* v. *Smythe, supra.*

I also quote from a few of the decisions which decline to accept the doctrine:

"This makes the defendant's liability to depend upon the object for which he purchased the machine, which was for the pleasure of the family; in connection with the fact that his daughter operated it for that purpose, the jury being instructed that thereby she became his servant. This is contrary to the doctrine of *Evers* v. *Krouse,* 70 N. J. Law, 653. It would subject a parent to liability if he bought for his son a baseball, or for his daughter a golf club, and by permitting them to be used by his children for their appropriate purposes, injury occurred." *Doran* v. *Thomsen, supra.*

"The doctrine contended for amounts to this: That the pleasure of the family in its utmost detail is the business of the father. As applied to the case at hand, it means that the son, in pursuit of his own pleasure, with an automobile owned by his father, was engaged in the business of the father. But the doctrine, we think, has no firm foundation in reason or common sense. In theory it overlooks well-settled principles of law; in practice it would interdict the father's generosity, and his reasonable care for the pleasure or even the well-being of his children, by imposing a universal responsibility for their acts." *Parker* v. *Wilson, supra.*

"The development of the law on this subject has been attended by a rather slow process of clarification. When the automobile was new and strange, and was regarded with some wonder and considerable fear, there was a tendency to look upon it as a dangerous thing, fraught with such possibility for harm that the owner should always be held responsible for its use. When it commenced to take the place of the family horse, this view had to be abandoned. The

notion, however, of general liability on the part of the owner for use of his car having been planted in the mind, it lingered there like a superstition.   Courts were reluctant to ignore it, and as a result, an adaptation of the law of master and servant, and principal and agent, was resorted to, to explain the liability. If a man purchased an automobile and allowed his wife and his son and daughter to use it, the use was his by virtue of representation, whether representation existed in fact or not.   The deduction was facilitated by employment of the fine art of definition— putting into the definition of the term 'business' the attributes necessary to bolster up liability.   So, if daughter took her friend riding, she might think she was out purely for the pleasure of herself and her friend, but she was mistaken; she was conducting father's 'business' as his 'agent.'   As this incongruity became more and more apparent, a further concession was sometimes made.   If the owner allowed a member of his family to use the automobile, he might not be liable, but it was 'presumed' the use was his by representation.   If son took his best girl riding, *prima facie* it was father's little outing by proxy, and if an accident happened, *prima facie* father was liable. Some courts were inclined to get rid of the difficulty of resting liability on the one existing fact—ownership of the car—by declaring that the question of 'agency' was one for the jury—a process known in some quarters as 'passing the buck.'   The sooner the courts settle down and deal on the basis of fact and actuality with a vehicle which has revolutionized the business and the pleasure of the civilized world, the better it will be, not only for society, but for the courts." *Watkins* v. *Clark, supra.*

Now the relation of principal and agent, of master and servant exists, at least between private individuals, by reason of contract, express or implied.   The right to contract is a right secured by both the Federal and State Constitutions.   I had supposed that the right to so contract, to pick out agents and servants, was the right of the individual citizen; that it was not the function of the legislature to pick out such agents and servants for him.   If the individual is secured

in his right to contract by the Constitution, it is for him to say whom he will contract with, whom he will employ. While the legislature may prescribe rules of evidence and may prescribe what *prima facie* creates such relation with its consequent liability, it is, to say the least, very doubtful if it may by declaring a conclusive presumption fix liability upon one who is neither a principal nor a master, and by legislative fiat not only deprive the citizen of the right to contract but make a contract for him and conclusively fix his liability under such contract relations. A decision of this particular question is not necessary to decision of this case, and what has been said may properly be considered *dictum,* as this court has declined to accept the "family purpose" doctrine. But the power of the legislature to select agents and servants for the individual is of such doubtful character as to strengthen the belief that the *Daugherty Case* was correctly decided, and that legislation making an individual liable for the tort of another is invalid, as there held.

I think the case should be reversed and a new trial granted, with costs of this court to defendant.

NORTH and WIEST, JJ., concurred with FELLOWS, J.