## McCUE *v.* DETROIT UNITED RAILWAY.

1. EVIDENCE — WITNESSES — ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS—REJECTION—WAIVER.

  In an action against a street railway company for personal injuries, where plaintiff denied the truth of a statement in a bill for divorce filed by her some time previously that about five years before she had had a stroke of paralysis, and she testified that she told her attorney that she had nervous prostration, any error in rejecting the testimony of her attorney, as privileged, as to what she told him, *held*, not prejudicial, in view of the fact that there was abundant evidence that at the time of the accident sued on and prior thereto plaintiff was and had been in good health, and it is not claimed that paralysis or nervous prostration is the cause of her present trouble or that it is related in any way with her previous illness.

2. IMPEACHMENT—EVIDENCE AS TO MATERIAL MATTERS.

  Evidence for impeachment should relate to matter material to the issue.

3. APPEAL AND ERROR—EXCESSIVE VERDICT TO BE RAISED BY MOTION FOR NEW TRIAL.

  A complaint that the verdict is excessive will not be reviewed on error unless first brought to the attention of the trial court by a motion for new trial.

4. SAME—TRIAL—REMARKS BY COURT—CURING ERROR.

  A statement by the trial court, in rejecting certain evidence, that counsel for defendant was "trying to smuggle in something that the law does not recognize," *held*, not prejudicial where the court, on the following day, on his attention being called to the statement by plaintiff's attorney, stated to the jury that he had no intention of imputing any trick or anything of a wrong nature to counsel, for whom he had the utmost respect, to which statement counsel for both parties assented.

5. SAME.

  Although a sentence in a statement by the court to a physi-

cian, defendant's witness, taken alone, might be preju-
dicial, *held*, not reversible error when it is taken with
the context, and the circumstances under which it was
uttered are taken into consideration.

Error to Wayne; Hosmer (George S.), J. Sub-
mitted April 27, 1920. (Docket No. 92.) Decided
June 7, 1920.

Case by Grace McCue against the Detroit United
Railway for personal injuries. Judgment for plain-
tiff. Defendant brings error. Affirmed.

*Corliss, Leete & Moody* (*A. B. Hall*, of counsel),
for appellant.

*Keena, Lightner, Oxtoby & Hanley*, for appellee.

CLARK, J. On January 17, 1917, two of defendant's
street cars were in collision and plaintiff, a passenger,
was thrown against a fare box and to the floor and
injured, the principal injury claimed being an injury
of the sacro iliac joint. Upon trial plaintiff had ver-
dict and judgment. Defendant made a motion for a
new trial, claiming newly-discovered evidence, viz.:
that in a bill for divorce filed by plaintiff prior to the
accident, admissions as to plaintiff's physical condi-
tion were made, principally that about March, 1912,
as a result of ill-treatment, she had suffered a stroke
of paralysis. A new trial was granted, which result-
ed in a verdict and judgment in favor of plaintiff.

Several of defendant's assignments of error relate
to the exclusion of the testimony of Edward R. Kehoe,
the attorney for plaintiff in the divorce proceedings.
Plaintiff, on direct examination, without objection,
testified that when she signed the bill for divorce she
had no knowledge that it contained the statement re-
specting paralysis, that she made no such statement
to the attorney but that she did in fact tell him that
about March, 1912, she had had an attack of nervous

prostration, and she further testified that she had never had paralysis. Defendant called Mr. Kehoe as a witness and sought to have his testimony as to the communication to him by plaintiff, his client, in the divorce case, respecting which communication plaintiff had testified. Objection being made, the court refused to receive the testimony, holding that the communication was privileged.

Regardless of whether, by the testimony of plaintiff as to the statements made to the attorney, there was a waiver of the privilege, we think there is nothing in this case to show affirmatively that defendant was prejudiced by the ruling. Plaintiff's illness of March, 1912, was nearly 5 years before this accident. There was abundant testimony that at the time of the accident and prior thereto plaintiff was and had been in good health. The claim of plaintiff, supported by the testimony of physicians, was that because of the collision and her being thrown as stated she suffered an injury to the sacro iliac joint, resulting in a bony overgrowth or outgrowth or spur, causing pain and suffering, lameness, and loss of motion in the joint. Plaintiff's physicians characterized this trouble as exostosis, being the formation or throwing out of bony tissue, also as traumatic arthritis, meaning an inflammation of the joint due to injury. Defendant's contention, likewise supported by the testimony of physicians, was that plaintiff's trouble was arthritis deformans, which is inflammation of the joints, the result of which is that the bones become hard, bare and icy, producing deformity, and that in plaintiff's sacro iliac joint there was deficiency of cartilege, arthritis deformans. Plaintiff was first examined by a physician of defendant nearly 5 years after her illness of March, 1912, and a later examination, upon which defendant's medical testimony was based in part, was nearly 7 years after such illness. Defendant's medi-

cal witnesses, supporting the theory of arthritis deformans, gave numerous causes of that trouble, including several infectious diseases, but nowhere is paralysis or nervous prostration claimed as a cause, nor is there any testimony, as we read the record, by which even a remote connection is claimed between plaintiff's later trouble and her illness of 1912. There being no affirmative showing of prejudice, the error, if any was committed, must be regarded as harmless. And evidence for impeachment should relate to matter material to the issue.

Defendant says that in the argument of counsel for the plaintiff there was error in that counsel stated:

"Now, you all know, of course, the change that there has been in the value of a dollar, in two years. They are now called dollarettes by some people, because you can buy so little. So, in figuring this amount, you should figure on the basis what a dollar is worth today —what the purchasing power is."

The dollar is the measure and standard of value. To determine damages according to the purchasing power of money is in effect to use purchasable articles or commodities as a measure and standard of value rather than money itself. This would be tracking back toward the confusion in standards of value of early colonial days. Such argument is not favored. The substance of defendant's complaint is that the probable effect of the argument was to increase the amount of the verdict, to render the verdict excessive in amount. We think that could be the only effect, if any. If a verdict is claimed to be excessive, such question will not be reviewed unless first brought to the attention of the trial court by a motion for a new trial. *Brockmiller* v. *Industrial Works*, 148 Mich. 642. Following the second verdict and judgment there was no motion for a new trial. The matter, therefore, was waived.

During a colloquy between court and counsel respecting the admissibility of certain evidence, the court said to counsel for defendant:

"Incompetent. I think you are trying to smuggle in something that the law does not recognize."

It is insisted that this was prejudicial error. Upon the court's attention being called to the statement the matter was cured by the following colloquy:

"*Mr. Hanley:* Just one thing, your honor, I don't know whether I should say it, or not; but I want to be absolutely safe on this record in this case. Yesterday, during part of the examination, there was more or less strenuous argument between Mr. Seely and myself, and your honor made the remark that Mr. Seely appeared to be trying to smuggle in something in the way of proof. Now, I know the way in which your honor made that, and Mr. Seely does; but I think it should be made clear to the jury that there was no insinuation on your part Mr. Seely was doing anything wrong or improper.

"*The Court:* There is no question, gentlemen; I didn't for a moment intend to refute (impute) any trick or anything of a wrong nature to Mr. Seely. I have too much respect for him, gentlemen.

"*Mr. Hanley:* I knew you didn't, but I wanted it to appear on the record.

"*The Court:* I don't think Mr. Seely would think I would think of such a thing.

"*Mr. Seely:* That is the last thing I would think of, your honor; to do anything of that kind.

"*The Court:* My relations with Mr. Seely have been very pleasant, and, as I said before, I have the utmost respect for Mr. Seely. I certainly didn't mean any such intimation should be made.

"*Mr. Hanley:* I knew you didn't mean it.

"*Mr. Seely:* It never occurred to me. That thought was entirely out of my mind."

Error is assigned upon a statement made by the court to a physician, defendant's witness. By considering the sentence itself some plausibility is given to

this contention, but when the sentence is put with the context and the circumstances under which it was uttered are taken into consideration, we do not think it can be said that the remark was so prejudicial that the case should be reversed for that reason.

The several other assignments of error, briefly referred to by counsel, have been considered.

The judgment is affirmed.

Moore, C. J., and Steere, Brooke, Fellows, Stone, Bird, and Sharpe, JJ., concurred.