### HAWKINS *v.* ERMATINGER.

1. CONSTITUTIONAL LAW—STATUTES—MOTOR VEHICLE LAW—AUTOMOBILES—RULE OF LAW—RULE OF EVIDENCE.

> The provision of section 29, Act No. 302, Pub. Acts 1915 (1 Comp. Laws 1915, § 4825), placing upon the owner of an automobile a liability for damages due to its negligent operation by the immediate members of his family, creates a substantive rule of law rather than prescribes a rule of evidence.

2. SAME—POLICE POWER.

> That the enactment of such statute by the legislature was a valid exercise of the police power, is *held,* by a divided court.

Error to Chippewa; Fead (Louis H.), J. Submitted June 11, 1920. (Docket No. 73.) Decided September 30, 1920. Rehearing denied December 21, 1920.

As to liability where parent's automobile is being driven by child, see notes in 41 L. R. A. (N. S.) 775; 50 L. R. A. (N. S.) 59; L. R. A. 1916F, 223; L. R. A. 1917F, 366; and L. R. A. 1918F, 297.

Case by Jane Hawkins against Henry Ermatinger for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed by a divided court.

*McDonald & Kaltz,* for appellant.

*Sherman T. Handy* and *Warner & Sullivan,* for appellee.

SHARPE, J.   About 8 o'clock in the evening of October 26, 1918, defendant's automobile, driven by his 15-year-old son, Reginald, collided with plaintiff's buggy, driven by her minor son and in which she was riding, on Spruce street in the city of Sault Ste. Marie. Plaintiff's left arm was broken above the wrist, and other injuries were sustained by her.   The buggy and harness were also damaged.   She recovered a verdict, on which judgment was entered, for $924.25, from which the defendant appeals.

The defendant sought to show that several weeks before the night in question he had given orders to the garage in which his car was kept when not in use not to allow his son Reginald to take it except on his written order, that he had instructed Reginald to the same effect, and that it was taken on the evening in question without his knowledge and consent and against his express orders.   The court refused to admit such testimony, basing its ruling on the last sentence of section 29 of Act No. 302 of the Public Acts of 1915 (1 Comp. Laws 1915, § 4825).   The entire section reads as follows:

"Civil actions.   Nothing in this act shall be construed to curtail or abridge the right of any person to prosecute a civil action for damages by reason of injuries to person or property resulting from the negligence of the owner or operator or his agent, employee or servant, of any such motor vehicle, or resulting from the negligent use of the highway by them or any of them.   The owner of a motor vehicle shall be liable for

any injury occasioned by the negligent operation of such motor vehicle, whether such negligence consists in violations of the provisions of the statutes of this State or in the failure to observe such ordinary care in such operation as the rules of the common law require: *Provided,* That the owner shall not be liable unless said motor vehicle is being driven by the express or implied consent or knowledge of such owner. In the event said motor vehicle is being driven at the time of said injury by the father, mother, brother, sister, son, daughter, or other immediate members of the family of the owner of said motor vehicle, then it shall be conclusively presumed that said motor vehicle is being driven by the consent or with the knowledge of such owner."

In 1905 (Act No. 196) the legislature provided for the registration and identification of motor vehicles and the regulation of their use of the public ways. It did not impose any liability for damages by reason of negligent operation, but provided in section 22 of that act that any right of action therefor should not be curtailed or abridged thereby. This act was amended in 1907 by Act No. 304, in which the regulations were made more stringent in many respects, but no change was made in section 22. In 1909 a more comprehensive act (No. 318) was passed. It re-enacted section 22 of the law of 1905 as subdivision 2 of section 10. Subdivision 3 provided:

"Liability of owners. The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation by any person of such motor vehicle, whether such negligence consists in violations of the provision of a statute of this State or in the failure to observe such ordinary care in such operation as the rules of the common law require; *but such owner shall not be so liable in case such motor vehicle shall have been stolen.*"

This subsection was declared unconstitutional in *Daugherty* v. *Thomas,* 174 Mich. 371 (45 L. R. A. [N. S.] 699, Ann. Cas. 1915A, 1163). It was held that

liability could not attach to an owner for an injury occasioned by the negligence of a stranger who had taken the car from the custody of one entrusted with its repair. Following this decision, the law of 1915 was enacted.

1. Defendant claims that this section, providing that it shall be "conclusively presumed" that the son was driving the car by the consent of or with the knowledge of the father, is such an arbitrary exercise of legislative power as renders it unconstitutional and void. It is said to contravene that part of section 1 of the 14th amendment to the Federal Constitution which provides:

"Nor shall any State deprive any person of life, liberty, or property, without due process of law."

—and that part of section 16 of article 2 of the Constitution of the State of Michigan which reads as follows:

"No person shall be    *    *    *    deprived of life, liberty, or property, without due process of law."

There is nothing gained by an effort to accomplish the result aimed at by changing a rule of evidence and declaring that when certain facts are present a "conclusive presumption" of another fact shall arise. This statute is in effect a substantive rule of law, the aim of which is to place upon the owner of an automobile a liability for damages due to its negligent operation by the immediate members of his family. Mr. Wigmore, in his work on evidence, in a note in volume 2, page 1667, says:

"Legislators frequently seem to believe that something is gained by labeling such statutes as rules of evidence."

Where the statute, in effect, creates a rule of substantive law, it cannot be invalidated because of its label. The same author, in volume 2, page 1665, says:

"So far as a so-called rule of conclusive evidence is not a rule of evidence at all, but a rule of substantive law, it is clear that the legislature is not infringing upon the prerogative of the judiciary."

Independent of the statute, the rule is settled in this State that to create a liability on the part of the father it must be shown that the machine was being driven by the minor in conducting what was properly the father's business. *Johnston* v. *Cornelius*, 193 Mich. 115, 200 Mich. 209 (L. R. A. 1918D, 880).

Our attention is called to the language in *Stapleton* v. *Brewing Co.*, 198 Mich. 170 (L. R. A. 1918A, 916), and *Hatter* v. *Dodge Bros.*, 202 Mich. 97. In neither of these cases was the constitutionality of this section considered or discussed, and we therefore do not rely on them as precedents to support the conclusion reached herein.

The question is here presented for the first time in this court, May the legislature, in the exercise of the police power, impose a liability on the owner of an automobile for damage due to its negligent operation by a member of his family who is using it without his permission and contrary to his orders?

Many efforts have been made to define "police power." It has been said to be "a law of necessity" for the protection of the public peace, morals, health and safety. Generally speaking, it may be said to include the power of the State to regulate the conduct of its citizens, and to be based on the two maxims:

(1) Regard for the public welfare is the highest law.

(2) You shall so conduct yourself and enjoy your own as not to injure others.

In *People* v. *Smith*, 108 Mich. 527 (32 L. R. A. 853), Mr. Justice Hooker said:

"It is not disputed that the State may regulate the use of private property, when the health, morals, or

welfare of the public demands it.  Such laws have their origin in necessity."

In *Daugherty* v. *Thomas, supra,* Mr. Justice STONE said:

"It has been held, both by this and other courts, that there can be no question of the right of the legislature, in the exercise of the police power, to regulate the driving of automobiles and motor cycles on the public highways of the State."

Under such power a large discretion is vested in the legislature, but it is at all times subject to constitutional restrictions and it is the duty of the judiciary to determine whether the manner of dealing with the power conferred contravenes the limitations imposed by the Constitution.  As was said by Mr. Justice Brown in *Lawton* v. *Steele,* 152 U. S. 133, 137 (14 Sup. Ct. Rep. 501) :

"To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals."

Preliminary to the consideration of the question, we may say that we are not concerned with the wisdom of the legislation.  If within the power of the legislature to enact, it should be sustained by the courts.  *People* v. *Worden Grocer Co.,* 118 Mich. 604. All presumptions must be indulged in to support its validity.

Many expressions in our decisions suggestive of the power of the legislature to extend the liability of the owner for damages, when his car is being driven by another, may be found.  In *Brinkman* v. *Zuckerman,* 192 Mich. 624, it is said:

"*In the absence of any statute enlarging the respon-*

*sibility of the owner,* defendant's liability depends upon whether the chauffeur, when the accident occurred, was acting as his servant and within the scope of his employment."

In *Hartley* v. *Miller*, 165 Mich. 115, 120 (33 L. R. A. [N. S.] 81), after deciding that an owner was not liable when his car was being driven by another, the court said:

"*We do not understand this to be the law in any State, in the absence of statutory enactment.*"

We may take judicial notice that the loss of life and injury to property sustained by innocent occupants of public ways by reason of the reckless driving of automobiles is appalling. Machines of high power and capable of great speed move quietly along the streets and, unless controlled by those experienced in their use, are more dangerous than street cars or railroad trains, whose approach may usually be heard and whose location is confined to the line of their tracks. Without extending these observations, we call attention to the language of Mr. Justice STEERE in *Colborne* v. *Railway*, 177 Mich. 139, 149, and *Patterson* v. *Wagner*, 204 Mich. 593, 600, in which such dangers are fittingly pointed out.

An automobile is not dangerous in the same sense as a ferocious beast loose on the streets. Until human agency intervenes, it is usually harmless. The hazard results from the conduct of the driver rather than the nature of the vehicle. It possesses, however, when recklessly driven, such power to do injury as to justify stringent regulations, not only of the vehicle itself but of the operator, for the safety of persons and property on the public ways.

This leads to the consideration of what we deem the meritorious question presented, Is the provision in question a reasonable regulation? We again emphasize the fact that the duty to so determine, primarily,

rests on the legislature and this court should only interfere when constitutional rights are invaded. The owner of such a vehicle has complete dominion over it and the absolute right of control thereof. He may, if he will, retain its possession and so prevent its use by persons other than careful, experienced operators. The legislature may impose upon him the obligation to do so as a legal duty. It has determined, in its judgment, that the most practical way in which it can compel the performance of such duty is to provide for his personal liability for damages occasioned thereby. The purpose of the act in this respect is not to provide a cause of action which did not exist before, but to protect the public in the use of the streets and highways. The fact that in doing so a rule of evidence or, in effect, a rule of substantive law is enacted which fixes a liability on him to pay damage for injury done by his machine when being driven by a member of his family without his permission or contrary to his orders does not render such legislation open to the charge that it deprives him of his property without due process of law. It in no way prevents litigation of the claim of negligence on the part of the driver. It simply insures to the injured party a right of action against a party presumably able to respond in damages therefor. By his neglect to observe the precautionary duty resting on him, the owner has rendered the injury possible and the act in no way violates his constitutional rights in holding him liable for the damages occasioned thereby.

While this statute is an innovation upon the common-law rule heretofore stated, we believe its constitutionality finds support in many cases in which the police power of a State has been considered. In *Jones* v. *Brim,* 165 U. S. 180 (17 Sup. Ct. Rep. 282), the validity of a law in Utah which rendered any person driving a herd of cattle, sheep, etc., along a highway

constructed on a hillside liable for damages done in destroying the banks of the highway, without regard to the question of negligence, was attacked as unconstitutional and sustained. It was held that the Federal amendment "does not limit, nor was it designed to limit, the subjects upon which the police power of a State may be lawfully exerted," and that "embraced within the police powers of the State is establishment, maintenance and control of public highways." The right "to classify occupations with relation to their peculiar liability to cause injury to property from the dangerous nature of the implements employed in the business" was upheld. The provision was said to be designed to put an end to any controversy as to the existence or non-existence of negligence and so provided for an absolute legal presumption to that effect, resulting from the fact of having driven the herd.

In *Commonwealth* v. *Alger*, 7 Cush. (Mass.), 53, Chief Justice Shaw, speaking for the court, said:

"It is a settled principle, growing out of the nature of well-ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community."

Revised Statutes of Ohio, § 4270 *et seq.*, provide that any judgment recovered by a person who loses money by gambling against the person winning the same shall be a lien on the building and real estate on which it stands, in which the gambling was conducted, if the lessor knowingly permitted it to be used for gaming purposes. In *Marvin* v. *Trout*, 199 U. S. 212 (26 Sup. Ct. Rep. 31), it was urged that the making of the judgment conclusive evidence of the liability of the lessor violated the due process clause of the State Constitution. The court said that—

"The liability of the owner   *   *   *   was clearly part of the means resorted to   *   *   *   for the purpose of suppressing the evil in the interest of the public morals and welfare."

In *Merchants & Planters' Bank* v. *Brigman*, 106 S. C. 362 (91 S. E. 332, L. R. A. 1917E, 925), the validity of an act (27 St. at Large, 737), providing that when a motor vehicle (a stolen car excepted) is operated in violation of the provisions of law or negligently and carelessly, and injury is caused thereby, any judgment recovered for damages shall be and constitute a lien upon such vehicle, next in priority to taxes, was questioned. The court, in upholding the act, said:

"Motor vehicles are a new and comparatively a modern means of locomotion. They are unquestionably dangerous, and can and do destroy property, kill and maim people, as much as locomotives and engines and cars on railroad tracks.   *   *   *
"The legislature, in passing the act in question in the exercise of its police regulations as to how dangerous instrumentalities could be operated on public highways, did not exceed its power and go beyond what it had the right to do."

In *Van Blaricom* v. *Dodgson*, 220 N. Y. 111 (115 N. E. 443, L. R. A. 1917F, 363), where it was sought to hold the father liable for the negligence of a minor son who was driving a car "purchased for the pleasure of the members" of his family, on the ground of agency, the court said:

"If, contrary to ordinary rules, the owner of a car ought to be responsible for the carelessness of every one whom he permits to use it in the latter's own business, that liability ought to be sought by legislation as a condition of issuing a license rather than by some new and anomalous slant applied by the courts to the principles of agency."

In *Cunningham* v. *Castle*, 111 N. Y. Supp. 1057 (127 App. Div. 580), the court said:

"It may be that it would be wise and in the public interest that responsibility for an accident caused by an automobile should be fixed to the owner thereof irrespective of the person driving it, but the law does not so provide."

2 Tiedeman, State and Federal Control of Persons and Property, § 170:

"While personal property is protected by constitutional limitations against all unnecessary interference and regulation, it is a standard rule of police power that one must not make such a use of his property as to injure another; and, consequently, the use and enjoyment of personal property may be subjected to such public regulation as may be necessary to prevent any threatened injury to the public."

See, also, *St. Louis, etc., R. Co.* v. *Mathews,* 165 U. S. 1 (17 Sup. Ct. Rep. 243) ; *Griffin* v. *Russell,* 144 Ga. 275 (87 S. E. 10, L. R. A. 1916F, 223, Ann. Cas. 1917D, 994) ; *Chicago, etc., R. Co.* v. *Zernecke,* 183 U. S. 582 (22 Sup. Ct. Rep. 229) ; *State* v. *Redmon,* 134 Wis. 89 (114 N. W. 137, 14 L. R. A. [N. S.] 229, 15 Ann. Cas. 408).

The record in this case shows that the son, Reginald, had been in the habit of driving the car with permission of the father. On this occasion, it is claimed that such permission was refused. The legislature may well have considered the impossibility of the plaintiff meeting such a defense and the necessity of providing against it.

The act involves the public policy of the State in its regulation of the use of such vehicles on the streets and highways and the provision complained of was within the power of the legislature to enact.

2. Were the allegations of defendant's negligence sustained by the proofs? The claims of plaintiff in this respect which were submitted to the jury were, *first,* that the defendant's automobile was driven at an unreasonable rate of speed; and, *second,* that it was

being driven on the left-hand side of the center of the street. It appears from the plaintiff's proofs that her horse and buggy were being driven slowly as they passed along Spruce street, going east. Just before reaching the intersection of Spruce street and Bingham avenue, they turned to the left to pass an automobile standing close to the curb. That defendant's car, coming south on Bingham avenue, as it turned westerly into Spruce street, passed to the east of the point of intersection. That when it struck plaintiff's buggy it was south of the center line of Spruce street. The driver of the buggy testified, "At no time was any part of the horse and buggy north of the center line of Spruce street." Neither the plaintiff nor her son was able to approximate the speed of the car, but testified that "it was coming pretty fast." The driver of the car testified that he had had experience in driving it for two or three years and was a careful driver. That at the time of the collision he was going under 15 miles an hour.

There was certainly a conflict in the testimony as to the relative positions of the buggy and the car on the street at the time the collision occurred. While the maximum rate of speed fixed by law may not have been exceeded, we think an issue of fact as to whether or not it was reasonable, under the circumstances, was presented. *Patterson* v. *Wagner, supra; Benjamin* v. *McGraw,* 208 Mich. 75.

3. The error assigned on the argument of plaintiff's counsel is disposed of by what was said by Mr. Justice CLARK in the recent case of *McCue* v. *Railway,* 210 Mich. 554, decided June 7, 1920.

The judgment is affirmed.

MOORE, C. J., and STEERE and CLARK, JJ., concurred with SHARPE, J.

FELLOWS, J. (*dissenting*). I agree with Justice

SHARPE in his construction of the statute under consideration: that it creates a liability rather than prescribes a rule of evidence. As so construed I am unable to agree that it is a valid exercise of the legislative power. In my judgment the case of *Daugherty* v. *Thomas,* 174 Mich. 371 (45 L. R. A. [N. S.] 699, Ann. Cas. 1915A, 1163), is absolutely controlling. In that case this court had under consideration the provision of subdivision 3 of section 10 of Act No. 318, Public Acts 1909. This court there held that the provision under consideration was not a regulation within the police power of the State but was in conflict with both Federal and State Constitutions. Mr. Justice STONE, who wrote for the court, exhaustively considered the authorities, and, with the concurrence of the entire bench, said:

"To hold subdivision 3 of section 10 constitutional is to hold a party absolutely liable for the negligent conduct of another, a mere stranger or a wilful trespasser, no matter how careful or free from negligence he himself has been. We think that the result of such holding would be to take the property of defendant Thomas to pay for the wrongful and negligent act of another person not sustaining to him the relation of servant, agent, or employee. Such a doctrine seems unnatural and repugnant to the provisions of the Constitution here invoked. We are forced to the conclusion that the provisions of this subdivision are not a necessary regulation in the exercise of the police power; that in and by its terms the plain provisions of the Constitution are violated; and the subdivision must be held unconstitutional, and the statutory liability therein asserted done away with."

During the course of the opinion Justice STONE had concisely stated the general rule in the following language:

"It may be laid down as a general proposition that absolute liability, without fault on his part, can not ordinarily be imposed upon a citizen."

If the provision there under consideration was not a regulation within the police power of the State then certainly the one here under consideration is not. That case recognizes the power of the State to regulate automobiles, but it denies the power of the State to take the property of one of its citizens to pay for the negligence of another. Unless we overrule that case the instant case must be reversed upon the ground that no actionable negligence of the defendant has been established. I think it was correctly decided and should not be overruled. It has been followed by this court in *Loehr* v. *Abell,* 174 Mich. 590 (where a minor son was using the car) ; *Mitchell* v. *Lumber Co.,* 175 Mich. 75 (where the daughter of an officer of the corporation was driving the car) ; *Barry* v. *Metzger Motor Car Co.,* 175 Mich. 466; *Levyn* v. *Koppin,* 183 Mich. 232; *Johnston* v. *Cornelius,* 193 Mich. 115 (where a minor son was using the car). In none of the cases before this court where the present statute was involved has its constitutionality as against the present objections been considered.

In my judgment the case should be reversed with a new trial and with costs to defendant.

BROOKE, STONE, and BIRD, JJ., concurred with FELLOWS, J.