## DICKELMAN MFG. CO. v. PENNSYLVANIA R. CO.

District Court, N. D. Ohio, W. D.   January 23, 1929.

No. 3366.

Geo. E. Schroth and Tracy, Chapman & Welles, of Toledo, Ohio, for plaintiff.

Wheeher, Bentley & Neville, of Lima, Ohio, and Fraser, Hiett, Wall & Effler, of Toledo, Ohio, for defendant.

HAHN, District Judge. Plaintiff's cause of action is based upon the first sentence of section 8970 of the General Code of Ohio, which is as follows:

"Every company * * * operating a railroad or a part of one shall be liable for all loss or damage by fires originating upon the land belonging to it caused by operating such road."

Plaintiff claims that its property was damaged by fire which was caused by a wreck upon the defendant's right of way. The wreck caused the derailment and ignition of two tank cars filled with benzol. The fire was communicated to the premises of the plaintiff, causing the damage complained of. The answer of the defendant as a second defense sets out the following:

"For a second and further defense herein this defendant, The Pennsylvania Railroad Company * * * further says that on the 20th day of July, 1927, this defendant was operating over its line of railroad and toward and through the Village of Forest, Hardin County, Ohio, a certain freight train consisting of a number of freight and tank cars; that said train being so operated as aforesaid was in charge of and being operated by careful, capable and skilled employees who were experienced therein; that as said train being so operated and proceeding as aforesaid approached in the village of Forest, Hardin County, Ohio, the point where this defendant's line of railroad was crossed by the Right of Way and Railroad tracks of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, a derailment of several cars in said train took place; that among the cars in said train which were derailed as aforesaid, were two tank cars containing a substance known as Benzol and as a result of said derailment, said benzol was released from said tank cars and ignited and took fire from the sparks caused by the friction of said tank cars, being constructed of steel, upon the rails of said railroad tracks; and that by reason thereof a fire was communicated to the property of the plaintiff which abutted the tracks and right of way of this defendant upon the North.

"This defendant the Pennsylvania Railroad Company, further avers that said derailment and the fire resulting therefrom was solely and proximately caused by a latent defect which existed in one of said tank cars same being known and designated as Tank Car I. S. C. X. No. 237; that said car, so this defendant discovered after said accident occurred, had an arch bar which is a bar forming part of the support for the trucks of said car, which was defective; that said arch bar was so located and constructed that any inspection of any nature which this defendant might be able to make of said car would fail to disclose said defect, same being a defect in the inherent nature of the said arch bar; that this defendant was not the owner of said tank car having said defective arch bar known as Car I. S. C. X. No. 237, nor said other tank car which as a result of same was derailed, and contributed to the fire; that said two tank cars were accepted by this defendant for transportation in Interstate Commerce as required by law and the rules and regulations of the Interstate Commerce Commission; and that it had no control of any kind or nature over said tank cars or over the construction, maintenance, or repair thereof except for the transportation thereof.

"This defendant therefore avers that by reason of all of the said foregoing facts, said derailment and resultant damage to the plaintiff was solely and proximately caused by the latent defect in said arch bar as hereinbefore set forth over which this defendant had no control of any nature and which could not have been discovered or foreseen by it, in the exercise of reasonable and ordinary care and diligence; and that said derailment and the resultant fire and damage to the plaintiff was and is the result of pure accident.

"This defendant further avers that the inherently defective condition of said arch bar caused the same to suddenly break at or about the point where the tracks of this defendant and the tracks of the Cleveland, Cincinnati,

Chicago & St. Louis Railway Company intersect in the Village of Forest, Ohio, and as a result thereof a broken end of said arch bar struck the tracks of said Cleveland, Cincinnati, Chicago and St. Louis Railway Company at said intersection and caused said derailment.

"This defendant furthers avers that this action is instituted and maintained by the plaintiff wholly and solely under and by virtue of Sections 8966 to 8974 of the General Code of Ohio; that under the above facts said Sections of the General Code of Ohio aforesaid, if enforced, will and do constitute a violation of article 5 of the amendments to the United States Constitution in that the same would be a taking of property without due process of law; that the same is and would be likewise a violation of article 14, section 1 of the United States Constitution, guaranteeing to all the equal protection of laws; and that the same would be and is a violation of the provisions of the Constitution of the State of Ohio corresponding to the provisions of the United States Constitution as hereinbefore set forth."

The facts in the above defense which were stressed in oral argument were: (a) That the defendant did not own the tank cars in question, and that it was required by the rules and regulations of the Interstate Commerce Commission to take the two tank cars for transportation in interstate commerce; (b) that the fire was caused by pure accident; and (c) that the fire which caused the damage did not result from the *use* of fire by the railroad company in the operation of its railway.

The argument of the defendant centered around the fact that the fire was caused by a pure accident; that the wreck caused friction between two tank cars and thus ignited the benzol, and did not result from the *use* of fire by the railroad company upon its property. The claim of the defendant was and is that, if the statute above referred to be construed to cover a situation such as is set forth in the second defense, then the statute is unconstitutional.

Counsel for the railroad company concede that under the holdings of Baltimore & O. R. Co. v. Kreager, 61 Ohio St. 312, 56 N. E. 203, and St. Louis & San Francisco Railway Co. v. Mathews, 165 U. S. 1, 17 S. Ct. 243, 41 L. Ed. 611, the statute above quoted is constitutional in so far as it makes a railroad company absolutely liable for damage caused by fires kindled by it in the operation of its railroad. Counsel's claim is that, if the statute is construed to cover fires which originate in any other manner, particularly in the manner set forth in the second defense, then the statute is unconstitutional. Stating the claim of counsel for the railroad company in another way, it is that the statute above quoted re-enacts the common law as it was before the passage of certain acts of Parliament, and in so far as the statute is merely a re-enactment of the common law it is constitutional; but counsel further claim that the absolute liability of the common law extended only to fires which were kindled by an occupier of land, and that it was only for the spread of such fires that the landowner was liable to an adjoining owner at common law. It is the contention of counsel that there is no authority in the Legislature to extend the absolute liability of the common law, which they claim related only to fires kindled by the occupier of land.

In view of the position taken by counsel for the railroad company, a disposition of the demurrer requires a consideration of two legal propositions: First, what was the absolute liability to an adjoining owner at common law for damage by fire; and, assuming that the liability was an absolute one, did it extend only to fires which were kindled by the occupier of land as opposed to fires which originated in some other way? and, secondly, assuming that the absolute liability of the common law related only to fires which were kindled by the occupier of land upon his own land, is it within the power of the Legislature, under the state and Federal Constitutions, to extend the liability of railroad companies to other fires which result from the operation of such railroads?

In the leading case of St. Louis & San Francisco Railway Co. v. Mathews, supra, Mr. Justice Gray begins his discussion with a statement of the common law as follows:

"At common law, every man appears to have been obliged, by the custom of the realm, to keep his fire safe so that it should not injure his neighbor; and to have been liable to an action if a fire, lighted in his own house, or upon his land, by the act of himself, or of his servants or guests, burned the house or property of his neighbor, unless its spreading to his neighbor's property was caused by a violent tempest or other inevitable accident which he could not have foreseen. Thirning, C. J., and Markham, J., in Beaulieu v. Finglam, Yearbook 2 H. IV, 18; Anon., Cro. Eliz. 10; 1 Rol. Ab. 1, Action sur Case, B; 1 D'Anvers Ab., Actions, B; Turberville v. Stamp, (1698) Comyns, 32; S. C., 1 Salk. 13; Holt, 9; 1 Ld. Raym. 264; 12 Mod. 152; Com. Dig., Action upon the Case for Negli-

gence, A, 6; 1 Vin. Ab. 215, 216; 1 Bac. Ab., Action on the Case, F, (Amer. Ed. 1852) p. 122; Canterbury v. Attorney General, 1 Phil. Ch. 306, 316–319; Filliter v. Phippard, 11 Q. B. 347, 354; Furlong v. Carroll, 7 Ontario App. 145, 159.

"The common law liability in case of ordinary accident, without proof of negligence, was impliedly recognized in the statute of Anne, passed within ten years after the decision in Turberville v. Stamp, above cited, and providing that 'no action, suit or process whatsoever shall be had, maintained or prosecuted against any person in whose house or chamber any fire shall accidentally begin, or any recompense be. made by such person for any damage suffered or occasioned thereby; any law or usage or custom to the contrary notwithstanding.' Stats. 6 Anne, (1707) c. 31 (58), § 7; 8 Statutes of the Realm, 795; 10 Anne (1711) c. 14 (24), § 1; 9 Statutes of the Realm, 684. By the statute of 14 Geo. III, (1774) c. 78, § 86, the statute of Anne was extended to 'any person in whose house, chamber, stable, barn or other building, or on whose estate, any fire shall accidentally begin.' "

The above statutes quoted by Mr. Justice Gray are summarized in Hepburn's Cases on Torts, p. 765, as set out below.[1]

At page 15 of 165 U. S. (17 S. Ct. 248), of the foregoing case, Mr. Justice Gray also quotes from Rolle's Abridgment, as follows:

"If my fire by misfortune burns the goods of another man, he, shall have his action on the case against me. If a fire breaks out suddenly in my house, I not knowing it, and it burns my goods and also my neighbor's house, he shall have his action on the case against me. So, if the fire is caused by a servant or a guest, or any person who entered the house with my consent. But otherwise, if it is caused by a stranger who entered the house against my will."

We have thus a statement of the common law as well as the adjudicated exceptions, which are as follows: (a) There is no liability "if it (the fire) is caused by a stranger who entered the house against my will;" and (b) "but if a sudden storm had arisen which he could not stop, it was a matter of

evidence, and he should have shewed it." Turberville v. Stamp (Court of Kings Bench 1697, 1 Salk. 13, 91 Reprint 13); Hepburn's Cases on Torts, 765.

Prof. Wigmore comes to the same conclusion as to absolute liability for damage from fire in his article on "Responsibility for Tortious Acts." Harvard Law Review, 315, 448 (1893); 3 Anglo-American Legal Essays, 474,511; and Select Essays on Torts, 18, 71, 72.

Other authorities discussing the absolute liability for damages by fire at common law are Pollock on Torts (12th Ed.) pp. 507, 508; Beven on Negligence (4th Ed.) pp. 618–637; Burdick's Law of Torts (4th Ed.) p. 13. That there was a rule of absolute liability at common law is doubted in Salmon on Torts (7th Ed.) p. 369.

After reading the above discussions of the rule at common law as well as some others, we are unable to determine the correctness of the claim of counsel for the railroad company to the effect that the absolute rule at common law applied only to cases where the fire was kindled by the occupier of land. Perhaps the earliest case upon the subject, however, Anonymous Case (Court of Common Pleas, 1582, Cr. Eliz. 10, 78 Reprint, 276), was one in which absolute liability was established upon the following facts:

"J. S. with a gun at the door of his house shoots at a fowl, and by this fireth his own house, and the house of his neighbor; upon which he brings an action on the case generally, and doth declare upon the custom of the realm, as 2 Hen. 4, viz., for negligently keeping his fire * * * And all the court held it did, for the injuries to the same, although his mischance was not by common negligence but by misadventure."

As noted above, the acts of Parliament referred to by Mr. Justice Gray, and which changed the rule of absolute liability at common law, were passed, respectively, in 1707, 1711, and 1774. It may be supposed that because of the then development of society, instrumentalities which might generate fire were in very limited use, and that cases seldom came before the courts for adjudication except in cases where the damage from fire resulted from a fire kindled by the occupier of land. Considering, however, the rule of absolute liability at common law in other cases, and that the law of negligence is of comparatively recent development (Prof. Wigmore, 7 Harvard Law Review, 315, 383, 441; 8 Harvard Law Review, 200, 377; Holmes' Common Law, 79–161), it is more than probable that the absolute liability of the common

---

[1] Ten years after Turberville v. Stamp, the Statute of 6 Anne, c. 31, § 6, provided that for the space of three years no action should be maintained "against any person in whose house or chamber any fire shall accidentally begin." This temporary act was declared in 1711 to "have been found useful and beneficial" and was then made perpetual. In 1774, the exemption from liability for accidental fires was extended to the person "in whose house, chamber, stable, barn, or other building, or on whose estate any fire shall accidentally begin." Stat. 14 Geo. III, c. 78, § 86.

law would have been applied by the courts to cases where the fires were not kindled by the occupier of land and only originated thereon from other instrumentalities brought upon the land by the landowner. There probably was then no law requiring the establishment of negligence before there could be a recovery. We think, however, that the liability of the defendant can be determined with more certainty upon another ground now to be considered.

The second legal proposition to be considered is, assuming that the absolute liability of the common law related only to fires which were kindled by the occupier of land upon his own land, is it within the power of the Legislature under the state and Federal Constitutions to extend the liability of railroads to other fires which result from the operation of such railroads? Counsel for the railroad company urge that the Legislature has no such power; that, to save it from unconstitutionality, section 8970 of the General Code of Ohio should be so construed as not to include fires of the kind described in the second defense. Counsel further claim that if the statute is construed to include such fires, it will violate (a) article 5 of the Amendments to the United States Constitution; also article 14, section 1, of the United States Constitution, in that there would be a taking of property without due process of law; (b) article 14, section 1, United States Constitution, guaranteeing to all the equal protection of the laws; and (c) that the same would be in violation of the provisions of the Constitution of the state of Ohio corresponding to the above provisions of the United States Constitution (article 1, §§ 2, 16).

■■ Counsel admit that the statute is broad enough in terms to cover damages from such a fire as the one set out in the second defense, and of this it seems to us there can be no doubt. The statute is "purely remedial" and should receive a broad construction. St. Louis, etc., Ry. Co. v. Mathews, supra (page 27 of 165 U. S. [17 S. Ct. 243]); Black on Interpretation of Laws (2d Ed.) 487.

Kindred statutes have been construed so as not to apply to certain fires in the following cases: Southern Railway Co. v. Power Fuel Co. (C. C. A. 4) 152 F. 917, 12 L. R. A. (N. S.) 472; Clark v. Kansas City, Ft. S. & M. R. Co. (C. C. A. 6), 129 F. 341. See Case Note 12 L. R. A. (N. S.) 472. And a kindred statute has been given a very broad construction in Brown v. Railway Co., 67 S. C. 481, 46 S. E. 283, 100 Am. St. Rep. 756. In that case a railroad company was held liable for damages resulting from a fire originating from heating a depot on its right of way, and the constitutionality of the statute as so construed was upheld.

If the statute is construed to make the railroad company liable in the circumstances set forth in the second defense, does it offend against the Fourteenth Amendment in that it deprives the railroad company of its property without due process of law? As early as 1876, Justice Waite said, in Munn v. Illinois, 94 U. S. 113, 124 (24 L. Ed. 77):

"A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will * * * of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances."

The above quotation was set out in Mondou v. New York, etc., Co., 223 U. S. 1, 32 S. Ct. 169, 56 L. Ed. pages 327 and 346, 38 L. R. A. (N. S.) 44, where the court, in a group of cases, sustained the constitutionality of certain employer's liability acts.

The case last cited, together with other cases, were cited by the Supreme Court in Arizona Copper Co. v. Hammer, 250 U. S. 400, 39 S. Ct. 553, 63 L. Ed. 1058, at page 1066, 6 A. L. R. 1537. The court there sustained the employer's liability law of the state of Arizona which imposed liability upon employers in respect to certain specified hazardous employments without regard to the question of their fault; and in a concurring opinion, Mr. Justice Holmes said:

"But if it is thought to be public policy to put certain voluntary conduct at the peril of those pursuing it, whether in the interest of safety or upon economic or other grounds, I know of nothing to hinder."

■ All of the foregoing authorities are authority for the proposition that state Legislatures are left with wide discretion, notwithstanding the provisions of the Fourteenth Amendment of the Federal Constitution, and that their conclusions respecting the wisdom of their legislative acts are not reviewable by the courts. The case of Arizona Copper Co. v. Hammer, supra, has been followed without modification in subsequent cases.

Motts, Due Process of Law, p. 289, quotes Mr. Justice Pitney, in Truax v. Corrigan,

257 U. S. 312, at pages 348–350, 42 S. Ct. 124, 135 (66 L. Ed. 254, 27 A. L. R. 375), as follows: "That no person has a vested interest in any rule of law, entitling him to have it remain unaltered for his benefit, is a principle thoroughly settled by numerous decisions of this court, and having general application, not confined at all to the rights and liabilities existing between employers and employees, or between persons formerly occupying that relation." The author at page 289, note 43, cites a number of cases where "particularly significant changes in common law remedies were upheld."

Burdick's Law of Torts (4th Ed.) § 15, pp. 17 and 18, is as follows:

"Statutory Imposition of Liability without Fault.—Since the passage of the initial English statute in 1897, Workmen's Compensation Acts have been adopted in most of the United States. Generally speaking the English statute and the American state statutes make the employer liable, irrespective of fault, for injury or death of employees occurring in the employment. Such state statutes are constitutional, being a proper exercise of the police power to protect the employer from exorbitant recoveries, the employee from costly litigation, and the public from the burdens ordinarily incident to industrial accidents (New York Cent. R. R. Co. v. White, 243 U. S. 188 [37 S. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629]. See Burdick, The Law of the American Constitution, 582 to 584). Broadly speaking loss suffered by employees in their employment is treated as part of the cost of the business in question, and being charged to the business is borne by the ultimate consumer. We have here in this field of employment evidence of a very general legislative policy to get away from fault as the basis of liability, and to make a business insure against loss to its employees. This would seem to be but one of the manifestations of the modern trend towards collectivism, as opposed to the individualism of the eighteenth and first half of the nineteenth centuries.

"We find other modern instances of the imposition by statute of liability irrespective of fault, reflecting legislative views as to the policy of absolute liability in various fields. Railroads have been made liable without fault for fires caused by their locomotives, and for injuries to passengers (Chicago, R. I. & P. R. R. Co. v. Zernecke, 183 U. S. 582 [22 S. Ct. 229, 46 L. Ed. 339]). A driver of animals has been declared liable for injury to

the highway, though guilty of no negligence (Jones v. Brim, 165 U. S. 180 [17 S. Ct. 282, 41 L. Ed. 677]), and an absolute liability has been imposed upon municipalities for injury done by mobs within their borders (Chicago v. Sturges, 222 U. S. 313 [32 S. Ct. 92, 56 L. Ed. 215, Ann. Cas. 1913B, 1349]). Liability has also been cast upon the owner of an automobile for injury caused by the driving of a member of his family, irrespective of whether the member was authorized or forbidden to drive (Hawkins v. Ermatinger, 211 Mich. 578, 179 N. W. 249)."

A learned discussion along the same line is found in 24 Harvard Law Review, page 647 et seq. An excerpt from the above article is found in a note, 34 L. R. A. (N. S.) page 163. Both the comment and the note last referred to discuss the case of Ives v. South Buffalo R. Co., 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156. The latter is an outstanding case and has caused much comment because it is clearly against the current of authority. [5] Having in mind the reasons given by Mr. Justice Gray in his opinion in St. Louis & San Francisco Railway Co. v. Mathews, supra, for sustaining the constitutionality of the statute there involved, and having in mind the principles announced in the decisions of the Supreme Court of the United States just cited, we are of the opinion that the state Legislature of Ohio was clearly within its power when it enacted the statute upon which this action is based, even if the statute be construed, as it must be, to cover a case such as is set forth in the second defense. It is clear from these decisions that where a business is of a hazardous character, legislation which is not unreasonable or arbitrary may fix liability which will make such industry carry the hazards of the business.

The statute now under discussion does not seem to us unreasonable or arbitrary. It is the result of experimentation by the state Legislature over a period of years. The Legislature first enacted 82 Ohio Laws, p. 118 (1885). The purpose of this act, as expressed in its title, was to require railroad companies to place spark arresters on locomotive engines. The Legislature next enacted 87 Ohio Laws, p. 99 (1890), the purpose of which, according to its title, was to compel railroads to keep their right of way free from all combustible material, and to use diligence in preventing fires. Next it enacted the statute which is involved in this action, 91 Ohio Laws, p. 187 (1894). It appears that the Legislature proceeded step by

step, and we must assume that the statutes resulted from the necessities of situations as gleaned by the Legislature over a period of years. The three acts above referred to have been codified as sections 8966 to 8974 of the General Code. These various acts are discussed by Mr. Chief Justice Taft, then Circuit Judge, in Continental Trust Co. v. Toledo, St. L. & K. C. R. Co. (C. C.) 89 F. 637.

The statute which is the basis of this action is in line with the present tendency of legislative acts. Roscoe Pound, in "The End of Law," 27 Harvard Law Review, 233, said:

"To-day there is a strong and growing tendency to revive the idea of liability without fault, not only in the form of wide liability for agencies employed, but in placing upon the enterprise the burden of repairing injuries without fault to him who conducts it, which are incident to the undertaking. There is a strong and growing tendency where there is no blame on either side to ask, in view of the exigencies of social justice, who can best bear the loss, and hence shift the loss by creating liability where there has been no fault." [2]

Counsel for the railroad company also call our attention to the case of Davis v. Assurance Co., 112 Ohio St. 553, 147 N. E. 913, a case which involved the construction of section 8970 of the General Code, which is the basis of this action. In that case a fire was generated through the act of an agent of the adjoining property owner. He removed the cover from one of the cars upon the railroad right of way, the car being filled with high-test gasoline. A fire resulted from the ignition of fumes of the gasoline by the fire in the fire box of a locomotive of the railroad company some distance away. The court held that the act of the agent of the adjoining property owner, and not the operation of the railroad, was the proximate cause of the injury, and that therefore there was no liability upon the part of the railroad company under the statute. On pages 550 and 551 of 112 Ohio St. (147 N. E. 913), the court takes note of the fact that the fire there involved would not have occurred except for the "active participation" of an agent of the adjoining owner.

▪ Counsel in this case urge the point that the active participation of the maker of the tank cars who was responsible for the latent defect, and not the operation of the railroad, was the proximate cause of the fire. Clearly the maker does not come within the definition of proximate cause, quoted by the Supreme Court on page 550 (147 N. E. 913) of its opinion.

▪ Counsel also urge that the case falls within one of the exceptions of the common law which, as we have seen above, is that the property owner is not liable for the acts of a stranger, and reference is made to the last line of the quotation from Rolle's Abridgment as found in St. Louis & San Francisco R. Co. v. Mathews, supra, page 15 of 165 U. S. (17 S. Ct. 243). We have quoted it above. Counsel further say that the maker of the tank cars was a stranger within the exception to the common-law rule because the railroad company was compelled by the rules of the Interstate Commerce Commission to take the tank cars in question for shipment in interstate commerce. The cars, however, were taken with the consent of the railway company, and its act was not in any sense involuntary, nor were the cars taken under compulsion. The defendant company voluntarily engaged in the railroad business. It thereby consented to operate according to law, which would require it to operate under the rules and regulations of the Interstate Commerce Commission, lawfully enacted. Legally, it took the tank cars with its full consent, and, as against the adjoining property owner, must assume the risks of latent defects which might cause fire in the operation of its railway. We are of the opinion that the decision in Davis v. Assurance Co., supra, does not require an overruling of the demurrer to the second defense.

It is also insisted that the statute in question offends against the equal protection clause of the Fourteenth Amendment, and this claim is made notwithstanding it is decided adversely to the defendant in St. Louis & San Francisco R. Co. v. Mathews, 165 U. S. 1, 17 S. Ct. 243, 41 L. Ed. 611, which is followed in Baltimore & O. Railway Co. v. Kreager; 61 Ohio St. 312, 56 N. E. 203. The claim of counsel for the railroad company is that the statute is unconstitutional because it does not include interurban railways, which also at times transport tank cars. Particular reliance is placed upon the case of Vigeant v. Postal Telegraph-Cable Co. of Massachusetts, 260 Mass. 335, 157 N. E. 651, 53 A. L. R. 867. (An annotation to this case, page 875 of 53 A. L. R., discusses the constitutionality of statutes imposing absolute liability on private persons or corporations.) The holding

[2] See, also, Thayer's Liability Without Fault, 29 H. L. R. 801; Selected Essays, pages 599, 612; Jeremiah Smith's, "Sequel to Workmen's Compensation Acts;" 27 H. L. R. 235, 344, 368; Nathan Isaacs' "Fault and Liability;". Selected Essays, pages 235, 243; 21 H. L. R. Line 54; St. Louis & San Francisco Railway v. Mathews, 165 U. S. 1, at pages 26 and 27, 17 S. Ct. 243, 41 L. Ed. 611.

of that decision, so far as is applicable here, is that a statute imposing absolute liability upon telegraph companies for injuries caused by their poles, wires, and apparatus, while not applying to others utilizing similar apparatus, unconstitutionally deprives such companies of equal protection of the laws. It is further held in that case that a statute, valid at the time it is passed, may become void at another time because of altered circumstances, and that the court will take judicial notice of the changed situation. It may be that the situation relating to telegraph companies and other companies utilizing similar apparatus is such in Massachusetts that to impose absolute liability upon telegraph companies alone is to unjustly discriminate against them within the prohibition of the Fourteenth Amendment.

█ But we think that other decisions control a disposition of this case. Counsel for complainant cite Middleton v. Texas Power & Light Co., 249 U. S. 152, 157, 39 S. Ct. 227, 63 L. Ed. 527, 531; and James-Dickinson Co. v. Harry, 273 U. S. 119, 125, 47 S. Ct. 308, 71 L. Ed. 569, 574. We add the case of Whitney v. California, 274 U. S. 359, 47 S. Ct. 641, 71 L. Ed. 1095. And see 6 R. C. L. 431. In Whitney v. California, supra, the court said:

"It is settled by repeated decisions of this court that the equal protection clause does not take from a state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary; and that one who assails the classification must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially abritrary. * * *

"A statute does not violate the equal protection clause merely because it is not all-embracing. * * * A state may properly direct its legislation against what it deems an existing evil without covering the whole field of possible abuses. * * * The statute must be presumed to be aimed at an evil where experience shows it to be most felt, and to be deemed by the legislature coextensive with the practical need; and [it] is not to be overthrown merely because other instances may be suggested to which also it might have been applied; that being a matter for the legislature to determine unless the case is very clear. * * * And it is not open to objection unless the classification is so lacking in any adequate or reasonable basis as to preclude the assumption that it was made in the exercise of the legislative judgment and discretion. * * * "

█ In view of this latest statement of the law, we cannot say that the Legislature of the state of Ohio abused the discretion which is vested in it by not including interurban railways which sometimes transport tank cars, as claimed by the defendant company.

█ The third defense is to the effect that the "defendant acquired its right of way in and through the Village of Forest, Ohio, in, along and through the premises of plaintiff; that in acquiring its said right of way as aforesaid, this defendant paid to said plaintiff or to its predecessors in ownership, for the right to operate and maintain a line of railroad together with the necessary equipment therefor in, along and through said premises; and that by reason thereof in the absence of actionable negligence on the part of this defendant in causing the matters and things complained of in the amended petition, the plaintiff is estopped from claiming further compensation for damages arising out of the operation and maintenance of said railroad." The validity of this defense also, it seems to us, has been decided against the railroad company in Baltimore & O. R. Co. v. Kreager, supra. The latter case cites Lyman v. Boston & Worcester R. Corp., 4 Cush. (Mass.) 290, which is also cited in St. Louis & San Francisco Railway Co. v. Mathews, supra, pages 11, 12, and pages 17, 18 of 165 U. S. (17 S. Ct. 243).

The demurrer to the second and third defenses is sustained. An order may be drawn accordingly.